**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re Application Of<br><br>MICHAEL HERZOG<br><br>Petitioner, For An Order Pursuant To 28 U.S.C. § 1782 To Obtain Discovery For Use In A Foreign Proceeding | Case No. 1:26-mc-00159 |

**DECLARATION OF DANIEL NAFTALIN IN SUPPORT OF MICHAEL HERZOG'S APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, DANIEL NAFTALIN, declare as follows:

1.    I submit this Declaration in support of the Application of Michael Herzog ("Petitioner" or "Mr. Herzog") for an Order Pursuant to 28 U.S.C. § 1782 To Obtain Discovery For Use In A Foreign Proceeding (the "Application").

2.    I am a solicitor duly admitted to practice in England and Wales, and I am a partner at the law firm of Mishcon de Reya LLP ("Mishcon de Reya").  I am based in London.  I qualified as a solicitor in 1998.

3.    I make this declaration based on my understanding and review of relevant documents and information, facts within my personal knowledge, and my training and experience as a solicitor in England and Wales.

4.    I, along with my colleagues at Mishcon de Reya, represent Mr. Herzog in proceedings filed against Davidson Kempner European Partners, LLP ("DKEP"), Davidson Kempner Solutions Cayman LP ("DK Solutions"), and Anthony Yoseloff (together, the "English Proceeding Respondents") on April 2, 2026 in the London Central Employment Tribunal of

England and Wales (the "Employment Tribunal").  The proceeding bears the caption *Michael Herzog v. (1) Davidson Kempner European Partners, LLP, (2) Davidson Kempner Solutions Cayman LP, (3) Anthony Yoseloff*, Case No. 6011625/2026 (the "English Proceeding").

5.    Mr. Herzog seeks assistance from this Court to obtain documentary and testimonial evidence from Davidson Kempner Capital Management LP ("DKCM") for use in the English Proceeding.

**Background.**[1]

6.    As alleged in the Complaint (defined below):

- The Davidson Kempner companies are part of a global organization with over USD $37 billion in assets under management and are comprised of multiple fund entities and operating companies globally (together, the "Firm").

- DKCM, the Firm's main operating entity, is not a party to the English Proceeding.  I understand that DKCM is a Delaware limited liability partnership, and it is headquartered in New York City at 9 West 57th St.  Declaration of Zachary D. Rosenbaum ("Rosenbaum Decl.") Ex. 5.  As a U.S.-based asset management company, DKCM is registered with the U.S. Securities and Exchange Commission.  *See id.*

- Since his appointment in 2020 Mr. Yoseloff has been the Managing Partner and Chief Investment Officer of the Firm.  He is also a managing member partner of DKCM.  Mr. Yoseloff is referred to in partnership agreements as the "Executive Managing Member."  As Executive Managing Member, Mr. Yoseloff ultimately controls DKEP and DK Solutions.  Mr. Yoseloff is based in New York City at DKCM's New York headquarters.  Mr. Yoseloff is a respondent in the English Proceeding.

- Mr. Herzog joined the Firm in 2001.  He was a limited partner of both DKEP and DK Solutions, each of which is a party to the English Proceeding.  He was the Firm's Global Head of Merger Arbitrage and Global Head of Long/Short Equity.  During his tenure with the Firm, Mr. Herzog was based in London.  Since April 2025, Mr. Herzog has been based in Zug, Switzerland.  Mr. Herzog is the claimant in the English Proceeding and the Petitioner in this Application.

- On October 30, 2024, Mr. Herzog sought to exercise his right under the Tenth Amended and Restated Agreement Supplementing the Tenth Amended and Restated Limited Liability Partnership Agreement of Davidson Kempner European Partners, LLP (the "DKEP Partnership Agreement") to become a "Retired Partner" as of February 1, 2025.

---

[1] This is a summary of factual allegations in the Complaint.

- The DKEP Partnership Agreement is being attached to the Rosenbaum Declaration as **Exhibit 4.**

- The DKEP Partnership Agreement contains a process for mediation and arbitration of "any and all Controversies."  Rosenbaum Decl. Ex. 4 § 17(A)(i).

**The English Proceeding.**

7.      On April 2, 2026, Mr. Herzog initiated the English Proceeding by filing a Claim Form and Grounds of Complaint (the "Complaint") in the Employment Tribunal against the English Proceeding Respondents.

8.      A true and correct copy of the Complaint is being attached to the Rosenbaum Declaration as **Exhibit 3.**

9.      On April 10, 2026, the Employment Tribunal confirmed to Mishcon de Reya (as Mr. Herzog's representatives) that (i) the Complaint has been accepted by the Employment Tribunal, and (ii) a copy of the Complaint has been sent to the English Proceeding Respondents by the Employment Tribunal Directly.

10.      The Complaint alleges that Mr. Herzog made a number of "protected disclosures" under English law between 2020 and 2024 to Mr. Yoseloff and various other partners at DKCM, DKEP, and DK Solutions (the "Protected Disclosures").  Rosenbaum Decl. Ex. 3 ¶¶ 24-103.  As detailed in the Complaint, these Protected Disclosures concerned Mr. Yoseloff's inadequate corporate governance of the Firm, including his "virtually uncontrolled power over the Firm" and the Firm's "inadequate risk management strategy," which together "raised potential breaches of fiduciary" and "regulatory duties in the UK and USA." *Id.* ¶ 1.

11.      The Complaint alleges that Mr. Herzog was "subjected to unlawful detriments" contrary to English law "on the ground that he made the protected disclosures" (the "Detriments") *Id.* ¶¶ 2, 105-143.  The Complaint also seeks remedies for "unlawful deduction from wages" contrary to English law by DKEP and DK Solutions.  *Id.* ¶¶ 2, 144-146.

3

12.     The Complaint is properly before the Employment Tribunal notwithstanding the arbitration clause in the DKEP Partnership Agreement.  The Complaint is brought in respect of breaches of Mr. Herzog's rights under the Employment Rights Act 1996 ("ERA 1996"), in particular (i) the right not to be subjected to any detriment on the ground that he has made a protected disclosure (§ 47B ERA 1996) (a.k.a. whistleblower disclosure), and (ii) the right not to suffer unauthorized deductions from wages (§ 13 ERA 1996).  It is not possible to contract out of these mandatory statutory protections.  Pursuant to § 203(1) ERA 1996 ("restrictions on contracting out"), any provision in an agreement (whether a contract of employment or not) is void insofar as it purports to (i) exclude or limit the operation of any provision of ERA 1996, or (ii) preclude a person from bringing any proceedings under ERA 1996 before an Employment Tribunal.  There is an exception to this general restriction on contracting out in relation to settlement agreements, provided that the settlement agreement satisfies the conditions in § 203(3) ERA 1996.  Those conditions include, without limitation, that (i) the worker has received advice from an independent adviser as to the terms and effect of the proposed agreement and, in particular, its effect on their ability to pursue their rights before an Employment Tribunal, (ii) the agreement must identify the adviser, and (iii) the agreement must state that the conditions regulating settlement agreements under the ERA 1996 are satisfied.  The DKEP Partnership Agreement does not satisfy these conditions and, therefore, the arbitration clause is void in relation to the Complaint.

**The Limited Discovery Sought.**

13.     Mr. Herzog brings this Application to obtain production of a narrowly tailored set of documents and deposition testimony from DKCM that is relevant and proportional to the claims at issue in the English Proceeding.

14. The proposed subpoena for documents, attached to the Rosenbaum Declaration as **Exhibit 1**, seeks documents relating to the Protected Disclosures made by Mr. Herzog and the Detriments suffered by Mr. Herzog at the hands of the English Proceeding Respondents.

15. Mr. Herzog seeks the following limited categories of documents for use in the English Proceeding relating to the Protected Disclosures:

a. Documents and communications relating to the amendments to the Partnership Governance Documents that occurred in 2020 and 2023 and reflecting the concerns raised by Mr. Herzog regarding the same (*i.e.*, relating to Protected Disclosures 1 and 2, Requests 1 and 2);

b. Documents and communications relating to the Firm's decision to establish an insurance business in and around 2022, and reflecting the concerns raised by Mr. Herzog regarding the same (*i.e.*, relating to Protected Disclosures 3 and 4, Request 3);

c. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog regarding the Firm's risk management practices (*i.e.*, relating to Protected Disclosure 5, Request 4);

d. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog regarding the Firm's management, supervision of, and responsibility for, the Distressed Opportunities Fund performance (*i.e.*, relating to Protected Disclosure 6, Request 5);

e. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog relating to the Firm's lack of proper internal management accounts for allocating costs (*i.e.*, relating to Protected Disclosure 7, Request 6);

f. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog relating to the function and structure of the Firm's internal compliance team, including its conflicts of interest procedures and the lack of separation from legal (*i.e.*, relating to Protected Disclosure 8, Request 7);

g. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog that the Firm was losing direction and therefore not managing investments in the best interests of its investors (*i.e.*, relating to Protected Disclosure 9, Request 8);

h. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog that Mr. Yoseloff managed the Firm as an autocracy (*i.e.*, relating to Protected Disclosure 10, Request 9);

i. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog that Mr. Yoseloff was devoting excess resources to his Family Office and had conflicts of interest (*i.e.*, relating to Protected Disclosure 11, Request 10); and

j. Documents and communications reflecting, corroborating and/or refuting the concerns raised by Mr. Herzog regarding the Firm's process of recruiting a new Chief Operating Officer in mid-to-late 2024 (*i.e.*, relating to Protected Disclosure 12, Request 11).

16. In addition to the above, Mr. Herzog also seeks the following limited categories of documents for use in the English Proceeding relating to the Detriments Mr. Herzog suffered at the hands of the English Proceeding Respondents as a result of his Protected Disclosures:

a. Documents and communications relating to the Firm's failure to treat Mr. Herzog as a Retired Partner (relating to Detriment 1, Request 12);

b. Documents and communications relating to the Firm's decision to apply certain reductions to Mr. Herzog's carry distributions (relating to Detriment 2, Request 13);

c. Documents and communications relating to the Firm's decision to revoke its agency relationship with Mr. Herzog for certain tax purposes (relating to Detriment 3, Request 14); and

d. Documents and communications concerning any allegations that Mr. Herzog breached his confidentiality and non-disparagement obligations to DKEP (relating to Detriment 4, Request 15).

17. I understand these documents are in the possession, custody and control of DKCM. They are also directly relevant to the English Proceeding. As outlined above, the Requests are limited to documents and communications that reflect, corroborate or refute, or otherwise relate to, the concerns raised by Mr. Herzog in the Protected Disclosures. Accordingly, these documents are not only relevant to the fact of the Protected Disclosures—*i.e.*, that they were made by Mr. Herzog as alleged in the English Proceeding—but also to the fact that the English Proceeding Respondents retaliated against Mr. Herzog as a result of the Protected Disclosures. Said differently, documents that tend to show the extent to which the wrongdoing complained of by Mr. Herzog was, in fact, occurring speak to the English Proceeding Respondents' motives in retaliating against Mr. Herzog for having made Protected Disclosures. This evidence will further support that

the English Proceeding Respondents acted with a retaliatory motive in imposing the Detriments as alleged in the English Proceeding.

18.    These documents, if obtained, will form part of the documentary evidence put before the Employment Tribunal and will be used by Mr. Herzog in the English Proceeding to supplement his witness evidence.

19.    Mr. Herzog also seeks to depose DKCM's corporate representative regarding Mr. Herzog's Protected Disclosures and the Detriments that Mr. Herzog suffered as a result of the same. The proposed corporate representative deposition subpoena is attached to the Rosenbaum Declaration as **Exhibit 2.**

**English Courts Are Receptive to Section 1782 Discovery.**

20.    Based on my training and experience, I am aware that the Employment Tribunal, where the English Proceeding is pending, is an adjudicative body that exercises statutory authority of England and Wales. The Employment Tribunal is responsible for adjudicating matters relating to workplace justice, and it is part of the United Kingdom's wider judicial system.

21.    Based on my training and experience, I believe that the Employment Tribunal will be receptive to the evidence sought by the Application. In general, the English courts are receptive to all evidence which could further the resolution of proceedings before them.

22.    English courts are specifically receptive to evidence obtained in the United States through applications pursuant to 28 U.S.C. § 1782. The House of Lords (then the final court of England and Wales, since re-established as the Supreme Court of England and Wales) has found that "any party preparing his case in the High Court . . . is entitled to . . . try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case." *South Carolina Insurance Co. v Assurantie*

*Maatschappij "de Zeven Provincien" N.V.* [1987] A.C. 24.  A true and correct copy of that decision is attached hereto as **Exhibit A.**

23.    I am not aware of any proof-gathering restrictions under English law that would prohibit the discovery sought here.

I declare under penalty of perjury under the laws of the United States of America that the foregoing Declaration is true and correct.

Executed on 16 April 2026
London, United Kingdom

Daniel Naftalin

8