# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019-6064
+1 212 373 3000

Gregory F. Laufer
+1 212 373 3441
glaufer@paulweiss.com

May 7, 2026

**VIA ECF**

Hon. Gary Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-6122

Re:    *Herzog* v. *Davidson Kempner Capital Management LP*, No. 1:26-mc-00159-VSB-GS

Dear Judge Stein:

We represent Respondent Davidson Kempner Capital Management LP ("DK") and are writing pursuant to Sections III(B) and III(H) of Your Honor's Individual Practices in Civil Cases in response to the letter filed by Petitioner Michael Herzog regarding certain materials he filed with redactions or under seal. We ask the Court to order more targeted redactions as set forth in Exhibit A. To the extent the Court requires a more complete record, DK requests the opportunity to fully brief its argument as to why these materials should remain under seal.

Petitioner—a former DK partner—brought this 28 U.S.C. § 1782 action seeking discovery for use in a proceeding he filed against DK in the London Employment Tribunal (the "UK Proceeding"), in circumvention of his arbitration obligations. He filed his application here with redactions and sealed exhibits, but it is clear he filed the application itself to generate publicity—not to protect DK's confidential information. Press reports appeared very soon after the filing, and Petitioner has not denied (in response to a letter we sent him) that he or his agents promoted this action in the press. His publicity-seeking is further confirmed by his decision to file this matter on the Court's public docket without prior notice to, or consultation with, DK, and in contravention of the ordinary practice of filing a proceeding entirely under seal in the first instance and only *then* asking the Court for tailored redaction/sealing authorization. And, there was not, and still is not, any urgency, since the initial court conference in the UK Proceeding is not scheduled until late *2027*, and no discovery will take place in the UK until some point *after* that date. All this to say that there is no exigency here whatsoever.

**The Court Should Order Tailored Redactions/Sealing.** DK requests narrower redactions than those proposed in Petitioner's letter motion as well as continued sealing for Exhibits 1–4 of the Rosenbaum Declaration. *See* Exhibit A. Specifically, DK requests sealed treatment for three categories of information: (1) the agreement supplementing the partnership agreement of DK's European affiliate (the "Partnership Agreement) (Dkt. 5-4); (2) the complaint in the UK Proceeding (the "UK Complaint") (Dkt. 5-3); and (3) materials that reveal by reference the substantive content of the Partnership Agreement, the UK Complaint, or other commercially sensitive information (Dkt. Nos. 3, 4, 5-1, and 5-2).

Courts may seal records pursuant to their "inherent equitable powers . . . over their own process to prevent abuses, oppression, and injustices." *Int'l Prods. Corp.* v. *Koons*, 325 F.2d 403, 407–08

(2d Cir. 1963).  Although "[t]here is a common law presumption in favor of permitting public access to judicial documents," courts balance this "presumption of access against competing comparisons, including the privacy interests of those resisting disclosure."  *GoSMiLE, Inc.* v. *Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649 (S.D.N.Y. 2011) (citing *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).  The same balancing applies to any First Amendment right of access, which can be outweighed in service of "higher values."  *Lugosch*, 435 F.3d at 120.  Materials filed with § 1782 applications, generally considered "non-dispositive" motions, are subject to a lesser presumption of public access.  *In re Upper Brook Cos.*, 2023 WL 172003, at *5 (S.D.N.Y. Jan. 12, 2023); *see also Nespresso USA, Inc.* v. *Williams-Sonoma, Inc.*, 2021 WL 1812199, at *1 (S.D.N.Y. May 6, 2021) (the presumption of public access is at its weakest "in the context of a discovery motion"); *United States* v. *Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013) ("discovery-related disputes are not covered by the qualified right of access").

Here, any weak presumption of access is easily overcome by countervailing interests and "higher values," including protecting DK's highly confidential and commercially sensitive information, international comity, and the privacy interests of innocent third parties.

The Partnership Agreement (Dkt. No. 5-4).  The Partnership Agreement should remain sealed.  It is not a judicial document entitled to a presumption of public access because it has practically nothing to do with the Court's ruling on the § 1782 application.  *See Lugosch*, 435 F.3d at 119; *United States* v. *Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").  Even if the Partnership Agreement were a judicial document, the presumption of access is weak and easily overcome by the need to protect DK's commercially sensitive information that exists to govern the internal affairs of DK's private partnership.  *See Pizzaro* v. *Sazerac Co.*, 2026 WL 296593, at *2 (S.D.N.Y. Feb. 3, 2026) ("Courts in this district routinely permit parties to seal or redact commercially sensitive information to protect confidential business interests and financial information." (cleaned up)); *In re Upper Brook Cos.*, 2023 WL 172003, at *5 (sealing "'confidential business information' from disclosure that would subject [a party] to 'financial harm' or a 'significant competitive advantage.'").  Public disclosure of the Partnership Agreement risks serious competitive harm to DK by revealing to both competitors and other key industry participants the firm's proprietary governance, management, and investment structure and information regarding the rights, obligations, benefits, and economic arrangement among partners.  The arrangements governing these entities have taken decades of industry experience to refine, are entirely unique to DK, and directly support and differentiate DK's ability to compete in the market.  *See Pizzaro*, 2026 WL 296593, at *3 (sealing where movant was "'engaged in a highly competitive industry and deliberately [] shielded such information from its competitors' to gain a commercial advantage"); *Monterey Bay Mil. Hous., LLC* v. *Ambac Assurance Corp.*, 2025 WL 1305150, at *5 (S.D.N.Y. May 6, 2025) (sealing partnership agreements); *Amodeo*, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts, and personal vendettas similarly need not be aided.").

The UK Complaint (Dkt. No. 5-3).  The UK Complaint should likewise remain sealed.  *First*, the UK Complaint is a nonpublic filing from a foreign jurisdiction.  *See, e.g.*, *In re Upper Brook Cos.*, 2023 WL 172003, at *8 (granting a motion to seal "[t]o avoid the disclosure of [litigation-related] documents that are potentially treated as confidential in the Netherlands"); *Strauss* v. *Credit*

*Lyonnais*, 2011 WL 4736359, at *3 (E.D.N.Y. Oct. 6, 2011) (sealing documents confidential under French law to promote international comity, "which the Supreme Court described as 'the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.'" (quotation omitted)).  The UK Complaint is not publicly available in its home jurisdiction, and the UK proceeding is in its nascent stages: as noted, a preliminary conference is not scheduled until November 2027, with discovery not expected to proceed until *2028*.  *See* Decl. of Richard Hornshaw.  The absence of sealing here would undermine the UK Tribunal's processes and invite use of U.S. courts to circumvent confidentiality protections abroad.  *See, e.g.*, *In re Upper Brook Cos.*, 2023 WL 172003, at *8; *Strauss* v. *Credit Lyonnais*, 2011 WL 4736359, at *3.  *Second*, although DK believes the allegations in the UK Complaint to be utterly lacking in merit, if not downright frivolous, the complaint nonetheless refers to highly confidential commercial information, including governance and strategic decisions, when and how DK chose to enter certain markets, descriptions of DK compensation practices, portfolio management strategy and decision making, and references to the Partnership Agreement.  Disclosure of this information would risk serious competitive harm to DK.  *See Pizzaro*, 2026 WL 296593, at *3.  *Third*, the UK Complaint includes names of individuals who are neither defendants in the UK proceeding nor respondents in this action.  It is well settled that "the privacy interests of innocent third parties . . . should weigh heavily" in favor of sealing.  *Amodeo*, 71 F.3d at 1050.

Materials Revealing the Contents of the Partnership Agreement, the UK Complaint, and other Confidential Information (Dkt. Nos. 3, 4, 5-1, 5-2).  The Memorandum of Law (Dkt. No. 3), the Naftalin Declaration (Dkt. No. 4), and the proposed subpoenas (Dkt. Nos. 5-1 & 5-2) each internally reference the substantive content of the Partnership Agreement, the UK Complaint, or both, as well as the names of innocent third parties and commercially sensitive information.  Unsealing or inadequately redacting these materials would effectively circumvent the sealing protections warranted for the Partnership Agreement and the UK Complaint themselves.  Thus, these materials include information that, if disclosed, would undermine the confidential treatment afforded by the Tribunal in the UK Proceeding and equally reveal DK's confidential commercially sensitive information.  *See Pizzaro*, 2026 WL 296593, at *2.  DK asks that these materials either remain under seal or be narrowly redacted, as applicable, consistent with Exhibit A.

To the extent the Court requires a more complete record, DK respectfully requests the opportunity to address these issues either in a conference with the Court or more developed briefing, on the same schedule as the merits briefing in this case.  *See In re Upper Brook Cos.*, 22-mc-97 ECF No. 23 (April 26, 2022) (permitting parties to brief sealing following merits briefing); *see also* Dkt. No. 21 (briefing schedule).  As explained above, there is no exigency given the status of the UK Proceeding.  Setting briefing on a consistent schedule would also allow the parties to meet and confer regarding the application, potentially narrowing the range of questions before the Court, while affording DK a full opportunity to be heard on these important questions.

Respectfully submitted,

*/s/ Gregory F. Laufer*
Gregory F. Laufer

cc:      All counsel of record (via ECF)