# Exhibit 2
# (Dkt. No. 3)

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

In Re Application Of

MICHAEL HERZOG

Petitioner, For An Order Pursuant To 28 U.S.C. §
1782 To Obtain Discovery For Use In A Foreign
Proceeding

Case No. 1:26-mc-00159

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION
FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
+1 212 488 1200

*Attorneys for Petitioner Michael
Herzog*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

BACKGROUND.................................................................................................................... 2

I.     Factual Background. ................................................................................................. 2

II.    The English Proceeding. .......................................................................................... 5

III.   The Limited Discovery Sought. ............................................................................... 7

ARGUMENT........................................................................................................................ 8

I.     The Application Satisfies Section 1782's Statutory Requirements.................................... 9

      A.    DKCM "Resides" in the Southern District of New York. ................................. 9

      B.    The Application Seeks Discovery "For Use" in a Foreign Proceeding........... 10

      C.    Mr. Herzog is an "Interested Person" Under Section 1782.............................. 11

II.    Each of the Discretionary Factors Strongly Favors Granting the Application. ................ 11

      A.    DKCM is Not a Participant in the English Proceeding. ................................... 12

      B.    Courts in the United Kingdom Are Generally Receptive to Section 1782 Relief. .................................................................................................. 12

      C.    The Application Comports with English Proof-Gathering Restrictions.......... 13

      D.    The Narrow, Targeted Discovery Requests Are Neither Unduly Intrusive Nor Burdensome................................................................................... 15

CONCLUSION .................................................................................................................... 16

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*In re CI Invs.,*
2023 WL 8643965 (S.D.N.Y. Dec. 14, 2023) ............................................................................... 13

*Azima v. Citibank, N.A.,*
2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) ............................................................................... 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
673 F.3d 76 (2d Cir. 2012) ............................................................................................................ 8

*Ecoprivate Bus. Ltd. v. Clearing House Payments Co. LLC,*
2023 WL 4848516 (S.D.N.Y. July 28, 2023) ................................................................................. 9

*Ex parte Abdalla,*
No. 20-MC-0727, 2023 WL 2911047 (S.D.N.Y. Apr. 12, 2023) ............................................... 16

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.,*
27 F.4th 136 (2d Cir. 2022) ......................................................................................................... 14

*In re 507 Summit,*
No. 23-MC-00427, 2024 WL 81842 (S.D.N.Y. Jan. 8, 2024) ..................................................... 11

*In re Abraaj Inv. Mgmt. Ltd.,*
No. 20-MC-229, 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) .................................................... 8

*In re Application of Salem,*
No. 24-MC-0005, 2024 WL 3026670 (S.D.N.Y. June 17, 2024) ............................................... 14

*In re Batbold,*
2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ................................................................................ 13

*In re Bourlakova,*
No. 24-MC-0071, 2024 WL 4839047 (S.D.N.Y. Nov. 20, 2024) ............................................... 10

*In re Children's Inv. Fund Found. (UK,),*
363 F. Supp. 3d 361 (S.D.N.Y. 2019) ........................................................................................... 9

*In re Del Valle Ruiz,*
342 F. Supp. 3d 448 (S.D.N.Y. 2018) ........................................................................................... 9

*In re Ernesto Andrade Grp.,*
712 F. Supp. 3d 438 (S.D.N.Y. 2024) ........................................................................................... 9

*In re Estate of Tillman v. City of N.Y.*,
  345 F.R.D. 379 (E.D.N.Y. 2024)..................................................................................15

*In re Evenstar Master Fund SPC*,
  No. 20MISC00418CSJCM, 2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ...........................12

*In re Fund for Protection of Inv. Rights in Foreign States*,
  No. 19-MC-0401, 2020 WL 3833457 (S.D.N.Y. July 8, 2020)................................................16

*In re Metallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997) .......................................................................................11

*In re Novalpina Cap. Partners I GP S.À.R.L.*,
  2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025) ............................................................12

*In re Pidwell*,
  No. 121MC0166ALCKHP, 2022 WL 192987 (S.D.N.Y. Jan. 21, 2022)................................12

*In re SPS I Fundo de Investimento de Acoes*,
  No. 22-MC-00118, 2024 WL 917236 (S.D.N.Y. Mar. 4, 2024) ......................................... 8

*In re Tel. Media Grp. Ltd.*,
  2023 WL 5770115 (S.D.N.Y. Sep. 6, 2023) ..............................................................13

*In re YS GM Marfin II LLC*,
  No. 20-MC-0182, 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022)................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..................................................................................Passim

*JSC BTA Bank*,
  577 F. Supp. 3d.......................................................................................13

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
  62 F. Supp. 3d 358 (S.D.N.Y. 2014) ........................................................................13

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ........................................................................ 10, 11, 15

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
  2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008).........................................................11

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
  2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)............................................................15

*ZF Automotive U.S., Inc. v. Luxshare, Ltd.*,
  596 U.S. 619 (2022) ............................................................................................................... 10

**Statutes**

28 U.S.C. § 1782.............................................................................................................Passim

Petitioner Michael Herzog ("Petitioner" or "Mr. Herzog") respectfully submits this Memorandum of Law in support of his Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding (the "Application") authorizing the issuance of subpoenas (the "Subpoenas") to Davidson Kempner Capital Management LP ("DKCM" or "Respondent") seeking documents and deposition testimony for use in a legal proceeding currently pending in the London Central Employment Tribunal of England and Wales.

## PRELIMINARY STATEMENT

Through this Application, Mr. Herzog seeks permission to take limited discovery from DKCM in support of a whistleblower action (the "English Proceeding") filed by Mr. Herzog in the London Central Employment Tribunal of England and Wales (the "Employment Tribunal"). That litigation, and the discovery sought herein, arises from mismanagement of Davidson Kempner by its leader, Mr. Anthony Yoseloff, and Mr. Yoseloff's efforts to punish Mr. Herzog, who is a former partner in certain United Kingdom and Cayman partnerships associated with DKCM. Those non-U.S. partnerships and Mr. Yoseloff individually are the respondents in the English Proceeding (collectively the "English Proceeding Respondents").

Before his departure in January 2025, Mr. Herzog repeatedly raised concerns about Mr. Yoseloff's misconduct and conflicts of interest. Specifically, as described below, Mr. Herzog repeatedly disclosed the dangers of Mr. Yoseloff's virtually uncontrolled power over Davidson Kempner, including his operation of Davidson Kempner as his personal family office, rather than one of the largest hedge funds in the world. But Mr. Herzog's disclosures fell on deaf ears, and ultimately, he was constructively dismissed from the firm by Mr. Yoseloff and deprived of the full value of his ownership stake in the fund. Mr. Herzog has therefore initiated the English Proceeding seeking compensation for the Detriments he suffered at the hands of the English Proceeding Respondents in retaliation for his attempts to

expose Mr. Yoseloff's wrongdoing (the "Protected Disclosures"). In support of the English Proceeding, Mr. Herzog now seeks discovery from DKCM, including documents and communications relating to Mr. Herzog's Protected Disclosures, and the deposition of DKCM's corporate representative.

Section 1782 relief is plainly warranted here. The Application satisfies all statutory factors: DKCM is found in this District and the discovery is for use in the English Proceeding in which Mr. Herzog is the claimant (making him an interested person here). And the discretionary factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weigh strongly in favor of granting relief: (i) DKCM is not a party to the English Proceeding; (ii) English courts are receptive to Section 1782 relief; (iii) the Application comports with, and does not circumvent, English proof-gathering restrictions; and (iv) the discovery sought is narrowly tailored and is not unduly burdensome.

Accordingly, Mr. Herzog respectfully requests that this Court grant the Application and authorize the issuance of the proposed subpoenas.

## BACKGROUND

### I.     Factual Background.

Davidson Kempner is a global investment management firm with over $37 billion in assets under management. Declaration of Daniel Naftalin ("Naftalin Decl.") ¶ 6; Declaration of Zachary D. Rosenbaum ("Rosenbaum Decl.") Ex. 3 ¶ 3. It is comprised of multiple fund entities and operating companies globally, including in London and the Cayman Islands (together, the "Firm"). Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶¶ 3, 10-12. The Firm's main operating entity is the New York-based entity, DKCM. Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶ 12. Mr. Herzog joined the Firm in 2001 and was a leading participant in the Firm's European presence. Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶¶ 3, 5. Mr. Herzog was a limited partner of the UK-based

2

entity Davidson Kempner European Partners, LLP ("DKEP") and the Cayman Islands-based entity Davidson Kempner Solutions Cayman LP ("DK Solutions").[1]  Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶¶ 7.1-7.2.  He helped create DKEP and was instrumental in building out the London office and establishing the Firm in European markets.  Rosenbaum Decl. Ex. 3 ¶ 5.  Mr. Herzog also played a key role in developing and globalizing the Firm's merger arbitrage business and was at one point the Firm's Global Head of Merger Arbitrage and Global Head of Long/Short Equity.  Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶¶ 5, 7.3.  Mr. Herzog was also a "managing member partner" of the Firm and was one of the largest capital holders in the partnership.  Rosenbaum Decl. Ex. 3 ¶¶ 7.4-7.5.

The Firm is currently led by Mr. Yoseloff, who became the sole Managing Partner and Chief Investment Officer ("Executive Managing Member") in 2020 when former Executive Managing Member Mr. Tom Kempner retired.  Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶ 14.  As Executive Managing Member, Mr. Yoseloff ultimately controls the entire Firm, including DKCM, DKEP, and DK Solutions.  Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶ 14.  As discussed in more detail below, from 2020 to 2024, Mr. Herzog made numerous disclosures to Mr. Yoseloff and others at DKCM about Mr. Yoseloff's management and operation of the Firm.  Naftalin Decl. ¶ 10; Rosenbaum Decl. Ex. 3 ¶¶ 24-25.  In particular, Mr. Herzog disclosed that, since 2020, Mr. Yoseloff has: (i) undermined the Firm's internal controls; (ii) run the Firm as his own fiefdom laden with personal conflicts of interest; (ii) operated a family office when he should be devoting all of his time and attention to the business of the Firm and its clients; (iv) misused Firm resources to create a wasteful insurance business that requires the attention of hedge fund personnel who should be working on client matters; (v) promoted inappropriate and unqualified individuals to

---

[1] DKCM acts as the investment manager to DKEP and DK Solutions and is responsible for voting and investment decisions.

3

senior roles because he can control them; (vi) taken arbitrary and punitive actions against Mr. Herzog and other partners; and (vii) weaponized the compensation process to deter any challenge to his autocratic rule. Rosenbaum Decl. Ex. 3 ¶¶ 26-103.

Finally, after years of treating Mr. Herzog unfairly and ignoring his repeated concerns about Mr. Yoseloff's management of the Firm, Mr. Yoseloff succeeded in pushing Mr. Herzog out of the Firm. *Id.* ¶¶ 104-104.2. Thus, on October 30, 2024, Mr. Herzog felt compelled to exercise his right under the Tenth Amended and Restated Agreement Supplementing the Tenth Amended and Restated Limited Liability Partnership Agreement of Davidson Kempner European Partners, LLP (the "DKEP Partnership Agreement") to seek to become a "Retired Partner" as of February 1, 2025. Naftalin Decl. ¶ 6; Rosenbaum Decl. Ex. 3 ¶¶ 104-104.2. But Mr. Yoseloff's retaliation against Mr. Herzog continued even after Mr. Herzog had left the Firm. Naftalin Decl. ¶ 11; Rosenbaum Decl. Ex. 3 ¶¶ 2, 105-143. Specifically, Mr. Yoseloff disputed Mr. Herzog's right to exit the Firm with "Retired Partner" status. Rosenbaum Decl. Ex. 3 ¶¶ 107-113.4. He also caused DKEP to begin charging Mr. Herzog substantial fees on his capital in the Firm, which is largely held as shares in the fund, Davidson Kempner International (BVI) Ltd. ("DKIL"). *Id.* ¶¶ 108-109. Faced with the prospect of paying these significant fees, Mr. Herzog was forced to redeem his capital in April 2025 and exit the Firm's retirement program. *Id.* ¶ 110. But the Firm continued to wrongfully retain a 10% balance (approximately $80 million) of the redemption proceeds and has made a number of improper deductions from Mr. Herzog's carry distributions. *Id.* ¶¶ 110, 114-130. The Firm also disclaimed its agency relationship with Mr. Herzog with respect to Mr. Herzog's residual tax liability and made a number of baseless accusations that Mr. Herzog breached his confidentiality and non-solicitation obligations under the DKEP Partnership Agreement. *Id.* ¶¶ 131-143.

Mr. Herzog sought to negotiate with the Firm and Mr. Yoseloff for several months prior to bringing the English Proceeding but was unable to reach any resolution.

## II.    The English Proceeding.

On April 2, 2026, Mr. Herzog filed a Claim Form and Grounds of Complaint (the "Complaint") in the Employment Tribunal.  Rosenbaum Decl. Ex. 3.  It details a number of "Protected Disclosures" made by Mr. Herzog between 2020 and 2024 to Mr. Yoseloff and various partners of DKCM, DKEP, and DK Solutions.  Naftalin Decl. ¶ 10; Rosenbaum Decl. Ex. 3 ¶ 24. Specifically, the Complaint alleges that Mr. Herzog disclosed information about his concerns relating to:

i.    Certain changes by Mr. Yoseloff to the partnership documents in 2020 and 2023, including changes concerning the Firm's checks and balances that offset Mr. Yoseloff's power to determine each managing member partner's percentage share in the Firm's profit (Rosenbaum Decl. Ex. 3 ¶¶ 26-40);

ii.   The Firm's strategy to create and divert significant resources to DK Solutions' insurance business because it lacked the history, reputation, client relationships and scale to compete with the major players in that business (*id.* ¶¶ 41-50);

iii.  The Firm's risk management strategy, which was "prejudiced and jeopardized" by a lack of any holistic approach towards risk across the Firm (*id.* ¶¶ 51-58);

iv.   Prolonged lack of supervision over the Firm's Distressed Opportunities Fund (*id.* ¶¶ 59-65);

v.    Lack of a proper internal management structure for allocating costs, which resulted in a number of cost misallocations and inaccurate allocations of partners' profit shares (*id.* ¶¶ 66-71);

vi.   Lack of adequate separation between the Firm's legal and compliance teams, which effectively left compliance issues to be resolved by line managers and eliminated effective checks and balances on Mr. Yoseloff (*id.* ¶¶ 72-78);

vii.  General loss of direction of the Firm, including an overall failure to focus on the performance of the Firm's hedge funds and the fact that the "Firm was one major redemption away from not being able to continue to operate" and that one Firm partner "lost over USD 500M and there was no accountability" (*id.* ¶¶ 79-84);

5

viii.  Mr. Yoseloff's practice of operating the Firm as an "autocracy where he controlled everything without any accountability" (*id.* ¶¶ 85-90);

ix.  Mr. Yoseloff's practice of "devot[ing] one day per week to his family office, instead of the Firm's funds" which resulted in a loss of Mr. Yoseloff's attention to the Firm's funds and other conflicts of interest (*id.* ¶¶ 91-96); and

x.  The promotion of Mr. Gabriel Schwartz to acting COO when he lacked relevant experience for the role (*id.* ¶¶ 97-103).

The Complaint further alleges that the English Proceeding Respondents failed to handle these Protected Disclosures in the manner required by English law and that Mr. Herzog suffered Detriments as a result, including:

i.  Failure of the Firm to treat Mr. Herzog as a Retired Partner and wrongful retention by DKEP of 10% of Mr. Herzog's redemption proceeds (*id.* ¶¶ 107-113.4);

ii.  Wrongful deductions from carry distributions (*id.* ¶¶ 114-130);

iii.  Wrongful revocation by the Firm of its agency relationship with Mr. Herzog for certain tax purposes (*id.* ¶¶ 131-137); and

iv.  Wrongful accusations that Mr. Herzog breached his confidentiality and non-solicitation obligations (*id.* ¶¶ 138-143).

The Complaint seeks various remedies against the English Proceeding Respondents including a declaration that Mr. Herzog was "subjected to unlawful detriment" under English law, compensation for losses sustained as a result of the Detriments, and additional aggravated damages and costs. *Id.* ¶¶ 144.1-144.5.

The arbitration clause in the DKEP Partnership Agreement does not bar the English Proceeding. Naftalin Decl. ¶ 12. According to English law, corporate whistleblowers such as Mr. Herzog have the mandatory statutory right to have their claims litigated in court. *Id.* ¶ 12. This right cannot be abridged by contract; accordingly, arbitration agreements that would seek to exclude the Employment Tribunal's jurisdiction over such claims are unenforceable and void. *Id.*

On April 10, 2026, the Employment Tribunal confirmed that (i) the Complaint has been accepted, (ii) a copy of the Complaint has been sent to the English Proceeding Respondents by the Employment Tribunal directly, and (iii) a case management preliminary hearing has been set for November 30, 2027. *Id.* ¶ 9. No evidence has yet been taken in the English Proceeding.

### III.    The Limited Discovery Sought.

The Application seeks production of a narrowly tailored set of documents and deposition testimony which is essential to support Mr. Herzog's claims in the English Proceeding. Mr. Herzog believes that information in the possession of DKCM by way of documents and corporate representative testimony will provide further evidence of English law violations by the English Proceeding Respondents.

Accordingly, through the proposed subpoenas attached to the Rosenbaum Declaration as Exhibits 1 and 2, Mr. Herzog seeks the following limited discovery from DKCM for use in the English Proceeding: (i) documents and testimony reflecting the Protected Disclosures made by Mr. Herzog and the facts underlying the events giving rise to those Disclosures; and (ii) documents and testimony reflecting the Detriments Mr. Herzog suffered at the hands of the English Proceeding Respondents as a result of his Protected Disclosures. *See* Naftalin Decl. ¶¶ 14-17.

The documents and testimony sought are highly relevant and probative to issues in the English Proceeding because they corroborate that the Protected Disclosures were actually made by Mr. Herzog as alleged. *Id.* ¶ 17. In addition, this discovery is relevant and probative because it will demonstrate that the English Proceeding Respondents retaliated against Mr. Herzog for making the Protected Disclosures as alleged in the English Proceeding. *Id.* ¶ 17. Indeed, DKCM was a witness to all of the alleged Protected Disclosures and its executive's misconduct is a primary basis for each. *Id.* ¶¶ 10, 17.

## <u>ARGUMENT</u>

This Court should grant the Application.  Under 28 U.S.C. § 1782, district courts are empowered to order discovery for use in a foreign proceeding pursuant to a two-step analysis. First, the applicant must satisfy three statutory requirements: (i) "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made;" (ii) "the discovery is for use in a foreign proceeding before a foreign tribunal;" and (iii) "the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).  Second, courts consider four discretionary factors: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

In exercising their discretion, courts should "tak[e] into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Abraaj Inv. Mgmt. Ltd.*, No. 20-MC-229, 2023 WL 2674752, at *2 (S.D.N.Y. Mar. 29, 2023) (citation omitted).  In light of these twin aims, courts in this Circuit "have instructed district courts to take a 'hospitable view' of Section 1782 discovery, the availability of which 'is quite broad and only has broadened through successive amendments over the years.'" *In re SPS I Fundo de Investimento de Acoes*, No. 22-MC-00118, 2024 WL 917236, at *1 (S.D.N.Y. Mar. 4, 2024) (citations omitted).

8

As set forth below, Petitioner easily satisfies the statutory requirements, and the discretionary factors overwhelmingly favor granting discovery. Accordingly, this Court should grant the Application and permit Mr. Herzog to take discovery from DKCM.

**I.     The Application Satisfies Section 1782's Statutory Requirements.**

The Application easily satisfies Section 1782's three statutory requirements: (i) DKCM "resides" in this district; (ii) the documents are "for use" in the English Proceeding; and (iii) Mr. Herzog is an "interested person" in the English Proceeding. This Court should therefore grant the Application.

**A.     DKCM "Resides" in the Southern District of New York.**

DKCM's presence in this District clearly satisfies the first statutory requirement. For the purposes of Section 1782, a business entity "resides" in a jurisdiction if, *inter alia*, it has its principal place of business there. *In re SPS I Fundo de Investimento de Ações – Investimento No Exterior,* 2024 WL 917236, at *3 (S.D.N.Y. Mar. 4, 2024); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 454 (S.D.N.Y. 2018), aff'd, 939 F.3d 520 (2d Cir. 2019) (finding that a foreign corporation with its principal place of business within the Southern District of New York "resides" within the Southern District of New York).

DKCM maintains its headquarters in midtown Manhattan at 9 West 57th St. *See* Rosenbaum Decl. Ex. 5; Naftalin Decl. ¶ 6. Nothing more is required. *See In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (finding the "resides or is found" requirement met because the subject entities "maintain offices and do business within the Southern District of New York"); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 368 (S.D.N.Y. 2019) (finding requirement met because the subject entity "maintains offices" in midtown Manhattan); *Ecoprivate Bus. Ltd. v. Clearing House Payments Co. LLC*, 2023 WL 4848516, at *2 (S.D.N.Y. July 28, 2023)

(finding requirement met where the applicant alleged that each entity "regularly transacts business and maintains an office in the District").

**B.      The Application Seeks Discovery "For Use" in a Foreign Proceeding.**

The Application plainly seeks information "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  *First*, it is beyond dispute that the Employment Tribunal is a tribunal within the meaning of the statute.  *See ZF Automotive U.S., Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 628 (2022) ("foreign tribunal" under Section 1782 refers to "an adjudicative body that exercises governmental authority" of a foreign sovereign).  The Employment Tribunal exercises the statutory authority of England and Wales in adjudicating matters of workplace justice. Naftalin Decl. ¶ 20.

*Second*, the requested information is "for use" in the English Proceeding.  Courts in this Circuit interpret "for use" broadly, finding the requirement satisfied where the discovery will "be employed with some advantage or serve some use in the proceeding."  *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  The discovery "need not be necessary for the party to prevail in the foreign proceeding."  *Id.*  Instead, the requested information need only be "minimally relevant" for the "for use" requirement to be satisfied.  *See In re Bourlakova*, No. 24-MC-0071, 2024 WL 4839047, at *2 (S.D.N.Y. Nov. 20, 2024) (citations omitted).

The discovery Mr. Herzog seeks here far surpasses the low bar of "minimally relevant." The proposed subpoenas demand documents and testimony that are in the exclusive possession of DKCM.  As discussed above, the discovery sought will corroborate that the Protected Disclosures at the heart of the English Proceeding were actually made by Mr. Herzog as alleged.  It will further demonstrate that the English Proceeding Respondents retaliated against Mr. Herzog for making the Protected Disclosures in the form of the alleged "Detriments."  Finally, the discovery is relevant to proving the facts pertaining to Mr. Yoseloff's wide-ranging misconduct on which the Protected

10

Disclosures were predicated.  Accordingly, the requested discovery goes directly to the merits of Mr. Herzog's claims in the English Proceeding and will be used by him there to litigate the same. Naftalin Decl. ¶¶ 17-18.  Thus, the requested information will, at a minimum, "serve some use" in the English Proceeding.  *See Mees*, 793 F.3d at 301.  This factor is satisfied also.

### C.    Mr. Herzog is an "Interested Person" Under Section 1782.

Finally, there is "no doubt" that Mr. Herzog, a party to the English Proceeding, is an "interested person" within the meaning of the statute.  *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.") (alteration in original); *In re 507 Summit*, No. 23-mc-00427, 2024 WL 81842, at *2 (S.D.N.Y. Jan. 8, 2024) ("Petitioners are interested persons because they are parties to the proceeding").

## II.    <u>Each of the Discretionary Factors Strongly Favors Granting the Application.</u>

Having found each of the statutory requirements satisfied, this Court must now evaluate the discretionary factors.  *See Intel*, 542 U.S. at 264–65.  As the Second Circuit has advised, "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (cleaned up).  Because "pursuit of these twin goals" typically requires "increasingly broad applicability," "[t]he Second Circuit has consistently ruled that it is far better to provide federal court assistance than none at all." *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *4 (N.D.N.Y. Aug. 18, 2008) (granting the Section 1782 application).  Here, each discretionary factor strongly favors discovery.  This Court should grant Mr. Herzog's Application.

11

**A.    DKCM is Not a Participant in the English Proceeding.**

The first *Intel* factor weighs in favor of granting the Application where, as here, the discovery target is not a participant in the foreign proceeding.  *See Intel Corp.*, *542 U.S. at 264.*

DKCM is not a party to the English Proceeding.  The English Proceeding involves claims by Mr. Herzog against Mr. Yoseloff and two of DKCM's non-U.S. affiliates, DKEP and DK Solutions.  *See generally* Rosenbaum Decl. Ex. 3.  The fact that DKCM may be affiliated with the two non-U.S. entity respondents in the English Proceeding does not weigh against this Application.  Indeed, courts in this District have repeatedly held that "parent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of Section 1782 applications, and accordingly parent entities are not viewed as within the jurisdictional reach of a foreign court for purposes of the first <u>Intel</u> factor."  *In re Novalpina Cap. Partners I GP S.À.R.L.*, 2025 WL 1160854, at *24 (S.D.N.Y. Apr. 21, 2025) (collecting cases) (internal quotation omitted); *see also In re Pidwell*, No. 121MC0166ALCKHP, 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022) (similar); *In re Evenstar Master Fund SPC*, No. 20MISC00418CSJCM, 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021) ("entities who are 'participants' in foreign proceedings are 'separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782'").

Thus, the first *Intel* factor weighs strongly in favor of granting the Application.

**B.    Courts in the United Kingdom Are Generally Receptive to Section 1782 Relief.**

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  Congress's twin aims of

promoting respect for foreign tribunals and encouraging reciprocal assistance are critical to the analysis under this factor: "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance," and a court "should deny discovery on the basis of a lack of receptiveness only where it is provided with 'authoritative proof that the foreign tribunal would reject evidence obtained with the aid of [S]ection 1782.'" *In re CI Invs.* 2023 WL 8643965, at *5 (S.D.N.Y. Dec. 14, 2023) (alteration in original; citation omitted).

Courts in this District have repeatedly recognized that "courts in the United Kingdom are receptive to Section 1782 discovery." *In re Tel. Media Grp. Ltd.*, 2023 WL 5770115, at *8 (S.D.N.Y. Sep. 6, 2023) (cleaned up); *accord In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *Azima v. Citibank, N.A.*, 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022); *JSC BTA Bank*, 577 F. Supp. 3d at 267; *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014). In fact, *Intel* itself cites a decision from the British House of Lords approving of litigants' use of Section 1782 in U.K. legal proceedings. *Intel*, 542 U.S. at 262. Accordingly, this factor also weighs strongly in favor of granting Mr. Herzog's Application.

### C.    The Application Comports with English Proof-Gathering Restrictions.

The third *Intel* factor evaluates whether a Section 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions. 28 U.S.C. § 1782. When assessing this factor, courts consider whether the foreign jurisdiction has "rules akin to privileges that prohibit the acquisition or use of certain materials"; absent an express prohibition, the third *Intel* factor weighs in favor of granting the application. *See In re Application of Salem*, No. 24-MC-0005, 2024 WL 3026670, at *13 (S.D.N.Y. June 17, 2024) (citation omitted). Moreover, "[w]hile district courts have broad discretion to grant or deny § 1782 applications, that discretion is not a license to engage in a free-ranging policy analysis of any given application without a basis in the *Intel* factors or the

13

broader 'twin aims' of the statute." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 155 (2d Cir. 2022).

Here, there are no restrictions in English law that would preclude Mr. Herzog from obtaining the discovery. *See generally* Naftalin Decl. ¶23. To the contrary, English courts take a permissive approach to obtaining evidence from other jurisdictions for use in litigation in England and Wales, including through use of the Section 1782 process. Naftalin Decl. ¶¶ 21-22. The House of Lords (now the Supreme Court) of England and Wales itself recognized this in *South Carolina Insurance Co. v Assurantie Maatschappij "de Zeven Provincien" N.V.* [1987] A.C. 24, ¶ 42 acknowledging that "any party preparing his case in the High Court . . . is entitled to . . . try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case." Naftalin Decl. ¶ 22; Ex. A. (noting that "the civil procedure of the High Court does not, in general, exercise any control over the manner in which a party obtains the evidence which he needs to support his case").

Furthermore, the arbitration clause in the DKEP Partnership Agreement does not weigh against granting the Application. Rosenbaum Decl. Ex. 4 § 17(A)(i). Rather, granting the Application comports with English policy, notwithstanding that arbitration clause. English policy favors adjudication of whistleblower claims in the Employment Tribunal. Accordingly, under the Employment Rights Act of 1996, parties cannot contract out of their rights to bring statutory whistleblower claims (like the ones at issue in the English Proceeding) before a tribunal. Naftalin Decl. ¶ 12. Any provision in an agreement is void insofar as it purports to prevent a person from bringing such claims, except in limited circumstances not applicable here. *Id.* Granting the Application therefore furthers a strong English policy of allowing whistleblower claims, such as

14

those at issue here, to be fully developed and litigated in English courts. *See id.* The third *Intel* factor also weighs strongly in favor of granting the Application.

> **D.      The Narrow, Targeted Discovery Requests Are Neither Unduly Intrusive Nor Burdensome.**

In applying the final *Intel* factor, courts "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302; *see also* Fed. R. Civ. P, 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). Accordingly, this factor weighs against discovery only where the burden to the subpoenaed party outweighs the value of the information to the serving party. *See In re Estate of Tillman v. City of N.Y.*, 345 F.R.D. 379, 384 (E.D.N.Y. 2024). Any potential concerns about the scope of subpoenas can be resolved through responses and objections and the subsequent meet-and-confer process. *See Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, 2006 WL 2996645, at *1 (S.D.N.Y. Oct. 13, 2006).

Here, the documents and deposition testimony sought in the Application are narrowly tailored to proving Mr. Herzog's claims in the English Proceeding. The requested documents and testimony are important to a fair determination of the English Proceeding because they go to the heart of Mr. Herzog's claims, by specifically (i) corroborating that the Protected Disclosures were made, (ii) corroborating that Mr. Herzog suffered Detriments as a result of the Protected Disclosures, and (iii) supporting Mr. Herzog's allegations of misconduct by Mr. Yoseloff, upon which the Protected Disclosures were based. Such narrow requests fall well within the bounds of Section 1782 applications that courts in this District have previously granted. *See, e.g.*, *In re Fund for Protection of Inv. Rights in Foreign States*, No. 19-MC-0401, 2020 WL 3833457, at *4 (S.D.N.Y. July 8, 2020), *rev'd sub nom. on other grounds*, *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596

15

U.S. 619 (2022) (finding that a Section 1782 discovery application, which requested myriad documents and sought to depose several individuals, was permissible in scope, as the requests went "to the heart of" the applicant's case); *Ex parte Abdalla*, No. 20-MC-0727, 2023 WL 2911047, at *5 (S.D.N.Y. Apr. 12, 2023) (finding that a Section 1782 application, which requested discovery from twelve persons and spanned nine years, was permissible in scope because it bore directly on the claims at issue in the litigation); *In re YS GM Marfin II LLC*, No. 20-MC-0182, 2022 WL 624291, at *11 (S.D.N.Y. Mar. 2, 2022) (finding that a Section 1782 application was permissible in scope where it sought documents from several individuals over a four-year period).  For these reasons, the fourth *Intel* factor also weighs strongly in favor of granting the Application.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the foregoing reasons, Petitioner respectfully requests that this Court issue an order (i) approving the Application for discovery; (ii) granting permission for Petitioner to issue the subpoenas as they appear attached as Exhibits 1 and 2 to the Rosenbaum Declaration; and (iii) directing DKCM to produce documents in its possession, custody, and control as requested in the subpoena attached as Exhibit 1 to the Rosenbaum Declaration by no later than 30 days following the date of this Court's order.

Dated: April 20, 2026
      New York, NY

Respectfully submitted,

By: */s/ Zachary D. Rosenbaum*

Zachary D. Rosenbaum
zachary.rosenbaum@kobrekim.com
Alyssa L. Aubuchon
alyssa.aubuchon@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
+1 212 488 1200


*Attorneys for Petitioner Michael Herzog*

17

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum of law complies with the word count limitation set forth in Local Civil Rule 7.1(c). According to the word count feature of the word-processing system used to prepare this document, the memorandum contains 5,014 words, excluding the caption, table of contents, table of authorities, signature block, and any required certificates.

_____
*/s/ Zachary D. Rosenbaum*

Zachary D. Rosenbaum