
Davis Wright
Tremaine LLP

42nd Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Jeremy A. Chase**
jeremychase@dwt.com

**Alexandra Settelmayer**
alexandrasettelmayer@dwt.com

212-489-8230 tel.
212-489-8340 fax

May 19, 2026

**VIA ECF**

Hon. Gary Stein
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re:    *In re Application of Michael Herzog*, Case No. 1:26-mc-00159
> **Non-Party Bloomberg L.P.'s Application for Access and Opposition to Respondent's Motion to Redact and Seal**

Dear Magistrate Judge Stein:

This firm writes on behalf of Non-Party Bloomberg L.P., the publisher of Bloomberg News ("Bloomberg"), to respectfully seek an order requiring the unsealing of certain redacted materials in Petitioner Michael Herzog's ("Petitioner" or "Herzog") Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding (the "Application") (ECF No. 3) in the above-captioned matter. Petitioner filed this Application to obtain discovery for a proceeding against Davidson Kempner Capital Management LP ("DKCM") pending in the London Employment Tribunal (the "UK Proceeding"). He has heavily redacted the Application and has filed certain exhibits under seal. In filing this request, Bloomberg specifically seeks the unsealing of the Claim Form and Grounds of Complaint (the "UK Complaint") (ECF No. 5-3) filed by Herzog in the UK Proceeding underlying the Application, and any references thereto within the Application, the Naftalin Declaration (ECF No. 5), and the proposed subpoenas (ECF Nos. 5-1 & 5-2). There is a compelling public interest in maintaining transparency in these proceedings, which involve allegations of wrongdoing against a global investment firm. Moreover, the public and press maintain a right of access to these judicial records under both the common law and the First Amendment.

### I.    Background

On April 20, 2026, Herzog filed the Application seeking discovery in the UK Proceeding. The Application and several exhibits were substantially redacted. Additionally, Herzog filed several exhibits entirely under seal, including the UK Complaint. On April 27, 2026, Herzog filed

Hon. Gary Stein
May 19, 2026
Page 2

a letter motion for an order provisionally sealing seven broad categories of information related to the Application.  ECF No. 9.  This information included: (1) the proposed subpoena to be served on DKCM, attached as Exhibit 1 of the declaration of Zachary D. Rosenbaum filed in support of the Application (the "Rosenbaum Declaration") (ECF No. 5-1); (2) the proposed corporate subpoena to be served on DKCM, attached as Exhibit 2 to the Rosenbaum Declaration (ECF No. 5-2); (3) the UK Complaint; (4) a partnership agreement, attached as Exhibit 4 to the Rosenbaum Declaration (ECF No. 5-4); (5) portions of the Application discussing any of these exhibits "or other information which [DKCM] might seek to justify sealing"; (6) portions of the Naftalin Declaration discussing these exhibits "or other information which [DKCM] might seek to justify sealing"; and (7) portions of the Rosenbaum Declaration discussing these exhibits "or other information which [DKCM] might seek to justify sealing."  ECF No. 9 at 2.  Herzog made clear that he "took no position on whether permanent sealing [was] warranted," but filed the letter so that DKCM had the opportunity to articulate whether sealing was appropriate.  *Id*.

On May 7, 2026, DKCM filed a letter motion (the "Sealing Motion" or "Sealing Mot.") (ECF No. 22) articulating why a narrower set of information—namely (1) the partnership agreement; (2) the UK Complaint; and (3) references to the partnership agreement, the UK Complaint, or other commercially sensitive information (ECF Nos. 3, 4, 5-1, 5-2)—should remain redacted or entirely under seal.  DKCM raises concerns of international comity (in its filing, it claims that the UK Complaint is not public in the UK proceeding and suggests that it will not become publicly accessible; as we explain, that is not the law in the UK), concerns about the release of commercially sensitive information, and concerns about maintaining the privacy of peripheral third parties.

From what is visible to the public, it seems that the UK Proceeding is a whistleblower action.  Herzog—who was formerly a partner at DKCM—alleges that he repeatedly raised concerns about certain conduct that DKCM was engaged in and was "constructively dismissed" from the firm as retaliation for his attempts to expose this alleged wrongdoing.  Application at 1–2.  The allegations concerning the specific underlying conduct are redacted in the Application, as is the underlying UK Complaint and any references thereto.  DKCM's Sealing Motion, however, included a slightly less redacted version of the Application revealing Herzog claims that DKCM's Chief Investment Officer, Tony Yoseloff operates with "virtually uncontrolled power," runs DKCM "as his personal family office, rather than one of the largest hedge funds in the world," and that Herzog was ousted after raising concerns about Yoseloff's "misconduct and conflicts of interest."  Sealing Mot. at 1.

DKCM is a global investment firm (Application at 3) with eight international offices, over 1,600 investors globally, and over $38 billion in assets under management.[1]  It invests assets on behalf of some of the U.S.'s largest pension and retirement funds, and has the ability to move markets and directly impact the financial stability of many in the American populace.  The public's interest in understanding the allegations in the UK Complaint is inarguably strong.  As discussed below, DKCM has not offered a sufficient justification as to why the UK Complaint and the references to this document should remain restricted from public view.

---

[1] *See* Davidson Kempner, https://www.davidsonkempner.com/approach (last visited May 19, 2026).

Hon. Gary Stein
May 19, 2026
Page 3

## II.     The Right of Access Grounded in the First Amendment and the Common Law

The public has a right of access to court records grounded in the First Amendment and common law. The fundamental objective of this right of access is to promote accountability in the judicial process and encourage public confidence in the administration of justice.

The United States Supreme Court has made clear that the First Amendment provides a "presumption of openness" to judicial proceedings and documents that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984). Openness of judicial processes and documents "gives assurance that established procedures are being followed and that deviations will become known" and corrected. *Id*. at 508. The constitutional presumption in favor of access requires "the most compelling circumstances" to justify any restriction upon that right, *In re Application of Nat'l Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980), and requires "specific, on the record findings" that sealing or courtroom closure "is essential to preserve higher values and is narrowly tailored to serve that interest" under the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citations and internal marks omitted). The Court must make "specific, on the record findings" in support of the denial of access here. *Press-Enterprise Co.*, 478 U.S. at 8–14. Accordingly, the requirements for barring public access to these judicial documents and proceedings have not been satisfied here.

The common law right of access is likewise well-established, and similarly creates a strong presumption of openness. This common law presumption is intended to promote accountability in the judicial process and to encourage public confidence in the administration of justice. *See*, *e.g.*, *Lugosch*, 435 F.3d at 119. It attaches to any "judicial document." *Id*. (defining "judicial document" as any material presented to the court "relevant to the performance of the judicial function and useful in the judicial process" (citation and internal marks omitted)). The weight of the common law presumption turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citation and internal marks omitted). Once the right of access attaches and the appropriate weight of the presumption is determined, it may be overcome only where "competing considerations" outweigh the presumption. *Id.* (quoting *Lugosch*, 435 F.3d at 119–20).

## III.    The First Amendment and the Common Law Rights of Access Mandate Unsealing of the UK Complaint and Any Related References in the Application and Supporting Materials

*First*, the materials that Bloomberg seeks to unseal were filed in connection with the Application. The documents were, therefore, "both submitted to the Court for purposes of seeking or opposing an adjudication of [the Application] and relevant to the performance of the judicial function and useful in the judicial process." *In re Gushlack*, 2012 WL 3683514, at *3 (E.D.N.Y. July 27, 2012) (quotation omitted), *R & R adopted,* 2012 WL 3779229 (E.D.N.Y. Aug. 30, 2012).

Hon. Gary Stein
May 19, 2026
Page 4

Accordingly, they are judicial documents "to which a presumptive right of public access attaches" and are entitled to "the strongest presumption of access." *Id.*; *Matter of Upper Brook Companies*, 2023 WL 172003, at *4–5 (S.D.N.Y. Jan. 12, 2023) (holding that documents filed in support of 1782 application were "judicial documents" because "they have the tendency to influence the Court's ruling" and were "entitled to a *substantial* presumption of access" (emphasis added)). DKCM's suggestion in its Sealing Motion that the Application is akin to a discovery motion (Sealing Mot. at 2)—and that the presumption of access is at its lowest—is contrary to the plain letter of the law.

*Second*, the justifications offered by DKCM do not outweigh the substantial presumption of access here. Initially, DKCM raises concerns of international comity asserting that the UK Complaint is not publicly available in its original jurisdiction within the UK (Sealing Mot. at 2). In support of that argument, DKCM offers the Declaration of Richard Hornshaw (ECF No. 24). But DKCM's argument overstates the issues here. While the UK Complaint is not *yet* public in the UK, and the Hornshaw Declaration sets forth the general norms of practice in the UK (*id.* at ¶ 24), it ignores that open justice is a fundamental principle of English law, and that the UK Complaint has not been sealed by operation of law or by court order. Nor are there any restrictions as a matter of law limiting its disclosure to third-parties. As a result, the Court should not be bound by the purported concerns of comity raised at this juncture. *See* Declaration of Rupert Cowper-Coles dated May 15, 2026, annexed hereto as Exhibit 1. As such, this Court should only look to U.S. law and the presumption of access required by the Common Law and the First Amendment.

*Third*, DKCM suggests that disclosure of the UK Complaint and related redacted information would "risk serious competitive harm" as these materials include highly confidential commercially sensitive information. Sealing Mot. at 3. This, however, cannot justify the blanket sealing of the UK Complaint in its entirety or allegations of misconduct relating to Yoseloff's potential conflict of interest or his running DKCM as a personal family office. And while it is true that highly confidential commercially sensitive information *may* be subject to closure, courts have declined to seal information where the movant failed to make any "evidentiary showing that the information that it [sought] to maintain under seal is a trade secret," *Alcon Vision, LLC v. Lens.com*, 2020 WL 3791865, at *8 (E.D.N.Y. July 7, 2020), and where the movant failed to show how disclosure "would result in any competitive harm." *Id.*; *see also Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020). DKCM has not even attempted to make such a showing. At a minimum, it should be made to do so if such sealing is to persist.

*Last*, DKCM's suggestion that sealing is appropriate based on the privacy interests of third-parties is not supported by the law. "While the privacy interests of innocent third parties are entitled to significant weight, judicial documents entitled to a strong presumption of public access must remain public 'absent the most compelling reasons.'" *United States v. Basciano*, 2010 WL 11679716, at *3 (E.D.N.Y. May 12, 2010) (citing *Lugosch*, 435 F.3d at 123). "Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny." *Id.* at *4; *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011) (holding, on a party's request to redact names of individuals whose conduct had been investigated in relation to alleged harassment and discrimination complaints, "[w]hile the conduct at issue may be

Hon. Gary Stein
May 19, 2026
Page 5

potentially embarrassing to these employees (and JPMC) and may negatively impact their career prospects, any injury the employees may suffer by release of the information is insufficient to rebut the strong presumption of access to the information at issue here"). Here, DKCM has articulated no special privacy interest for any individual named in the UK Complaint that warrants sealing or redaction. Again, it should be required to make a sufficient showing so that the Court can consider any such third-party interests and balance those against the public's right of access.

Put simply, DKCM has failed to identify competing considerations sufficient to overcome the substantial presumption of access under the common law and First Amendment here.

\*       \*       \*

In conclusion, Bloomberg respectfully requests that the Court order the UK Complaint and any redacted references in the Application and the supporting materials be unsealed. At the very minimum, Bloomberg respectfully requests that, to the extent the Court permits the sealing of certain material here, it issue a memorandum opinion setting forth the basis and reasoning for its sealing.

If it would assist the Court in reaching its decision, counsel for Bloomberg respectfully requests to be heard at any hearing on this matter. We thank the Court for its consideration in that matter.

Respectfully Submitted,

Davis Wright Tremaine LLP

Jeremy A. Chase
Alexandra Settelmayer
Mary E. Goetz

cc:      Attorneys of Record (via ECF)