# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019-6064
+1 212 373 3000

Gregory F. Laufer
+1 212 373 3441
glaufer@paulweiss.com

May 27, 2026

**<u>VIA ECF</u>**

Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Herzog* v. *Davidson Kempner Capital Management LP*, No. 1:26-mc-00159-VSB-OTW

Dear Judge Wang:

We represent Respondent Davidson Kempner Capital Management LP ("DK") and are writing in response to Non-Party Bloomberg L.P.'s ("Bloomberg's") Application for Access and Opposition to Respondent's Motion to Redact and Seal.  Dkt. No. 27.  Bloomberg asks the Court to unseal the UK Complaint (Dkt. No. 5-3), and substantive references to it in the Section 1782 briefing (Dkt. No. 3), the Naftalin declaration (Dkt. No. 4) and the proposed subpoenas (Dkt. Nos. 5-1 and 5-2). *See* Dkt. No. 27 at 1.[1]

DK stands by the positions it articulated in its prior submission to the Court on this subject, Dkt. No. 22, and respectfully asks the Court to deny Bloomberg's request.  To that end, we are also submitting a short supplemental declaration from Richard Hornshaw responding to certain points raised in Bloomberg's Application.

DK does not dispute that the public and the press have a recognized interest in access to judicial records under the First Amendment and the common law, but that interest is not absolute.  The Second Circuit's framework in *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), expressly contemplates sealing where recognized "countervailing factors" or "higher values"— which include commercially sensitive information, international comity, and third-party privacy— outweigh the presumptions of access.  Each of those higher values is present here.  Bloomberg's arguments to the contrary lack merit and contain a number of legal and factual inaccuracies, including its reliance on a professed but in fact nonexistent quotation from this Court's decision in *Upper Brook* that omits the operative qualifier and inverts the Court's actual reasoning, as discussed further below.

---

[1]    Bloomberg does not request or otherwise seek access to the agreement supplementing the partnership agreement of DK's European affiliate ("Partnership Agreement"), attached as Exhibit 4 to the Rosenbaum Declaration.  Dkt. No. 5-4.  As such, DK does not address that issue here, and maintains its prior position, which is that the Partnership Agreement should remain sealed.  *See* Dkt. No. 22.

I.    The UK Complaint and Materials Referencing It Should Remain Under Seal

The UK Complaint, and references to it in the Section 1782 application, the Naftalin declaration, and the proposed subpoenas should remain under seal for the reasons set forth in DK's prior letter. Among other things, the UK Complaint is a nonpublic filing from a foreign jurisdiction. And although DK believes the allegations in the UK Complaint are entirely without merit, pursuant to UK law, that document remains non-public in the UK where it is filed. In addition, it also contains and references confidential commercial information and the names of third parties whose names have no bearing on this matter at all. *See* Dkt. No. 22 at 2. Bloomberg's arguments to the contrary lack merit.

As a threshold matter, Bloomberg invokes routine arguments about public access to materials relating to a US dispute. In fact, this dispute is, for all intents and purposes, a UK dispute that should have remained there. Filing discovery that would not be allowed in the UK as a gambit to make public that which UK law declares should remain private, makes these authorities and arguments irrelevant. In this context—admittedly perhaps an unusual one—the public's interest in the underlying dispute is not a cogent argument. In the UK, where the dispute is pending, all of the materials relating to the matter are non-public. There is no true "public interest" in access to that which UK law makes inaccessible. Use of the US courts to get around UK law is a misuse of the judicial process.

The animating principle underlying the US common law presumption of access is the proper functioning of the court system. *Lugosch*, 435 F.3d at 119 ("The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. . . . [M]onitoring is an essential feature of democratic control." (quoting *United States* v. *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995))). Those principles developed in response to actions properly filed and litigated in the US; they do not extend to using the US courts to circumvent UK procedural rules relating to what the UK itself considers non-public. In this context, arguments relying on important First Amendment principles are not an invocation of what is proper and right, but a misuse of the US judicial system.

Under any applicable standard, interest in access is not intended to simply satisfy inquisitorial third-party interests in particular allegations made in a filing that has no business being in a US court and would remain non-public in the UK where it is pending. Furthermore, there is "no basis to afford additional weight to [sealed materials at issue] simply by virtue of their subject matter" and doing so "would require a court to engage in an inherently subjective determination as to the newsworthiness of particular information." *United States* v. *Cohen*, 366 F. Supp. 3d 612, 622 (S.D.N.Y. 2019). By arguing that the public has an interest in "the allegations in the UK complaint" which justifies unsealing, Bloomberg asks this Court to engage in precisely the kind of subjective analysis that *Cohen* condemns. Dkt. No. 27 at 2.

But even setting aside Bloomberg's misstatement of the governing legal standards, its arguments in support of access to the UK Complaint (and references to it in other documents) lack merit.

*First*, Bloomberg contends that 1782 materials are judicial documents subject "to 'the strongest presumption of access.'" Dkt. No. 27 at 3–4. This is a principle used routinely by news outlets in

support of similar applications but it is inapplicable here.  Bloomberg's reliance on *In re Gushlak* is also misplaced.  2012 WL 3683514 (E.D.N.Y. July 27, 2012), *R&R adopted* 2012 WL 3779229 (E.D.N.Y. Aug. 30, 2012).  For one thing, *Gushlak* did not consider the well-established principle that § 1782 discovery applications are generally considered "non-dispositive" and thus subject to a lesser presumption of public access.  *In re Upper Brook Cos.*, 2023 WL 172003, at *5 (S.D.N.Y. Jan. 12, 2023); *see also Nespresso USA, Inc.* v. *Williams-Sonoma, Inc.*, 2021 WL 1812199, at *1 (S.D.N.Y. May 6, 2021) (the presumption of public access is at its weakest "in the context of a discovery motion"); *United States* v. *Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013) ("discovery-related disputes are not covered by the qualified right of access" (citing *SEC* v. *TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001)).

Bloomberg mischaracterizes this Court's decision in *Upper Brook*, attributing to it a quotation that omits the operative qualifier.  More specifically, Bloomberg quotes *Upper Brook* for the proposition that 1782-related documents are, in Bloomberg's telling, "entitled to a *substantial* presumption of access."  Dkt. No. 27 at 4 (Bloomberg's emphasis).  But, the actual quoted sentence reads that documents at-issue were "entitled to a presumption of access," that "1782 applications are generally considered non-dispositive," and that the presumption is less than the one that applies to dispositive motions.  *Upper Brook*, 2023 WL 172003, at *4–5 (explaining that materials filed in connection with a 1782 application are "subject to a lesser – but still substantial – presumption of public access").  In sum, Bloomberg's misleadingly curated quotation, which omits reasoning that cuts squarely against its proffered position, misstates the proper weight-of-presumption analysis, which favors sealing here.

*Second*, Bloomberg contends that the Court should, at least at this juncture, disregard the admittedly nonpublic nature of the UK Complaint.  This entirely ignores the principles of comity which are a clear basis for this Court to maintain the non-public treatment that the UK courts require at this stage.  Remarkably, Bloomberg has cited no legal authority for its position.  Instead, Bloomberg relies exclusively on a declaration from Rupert Cowper-Coles, who himself freely admits that the UK Complaint is not now public, would not become viewable by the public until, at the earliest, the first public hearing before the UK Employment Tribunal, and the UK Employment Tribunal could prevent or restrict public access pursuant to Rule 49 of the Employment Tribunal Procedure Rules 2024.  Dkt. No. 27-1 at 2–3; *see also* May 27 Decl. of Richard Hornshaw ¶ 3.  These concessions confirm that the UK Complaint is effectively confidential at this stage by the operation of the Tribunal's ordinary procedures.  The absence of a formal Rule 49 order reflects only that no party has needed to seek one because the default position is nondisclosure.  May 27 Decl. of Richard Hornshaw ¶ 6.

Moreover, neither Mr. Cowper-Coles nor Bloomberg disputes that the first public hearing is unlikely to occur *until 2028 or 2029 at the earliest* and, even then, the UK Complaint would likely still remain non-public and be available only to those attending the hearing in person and only for inspection, not to copy or retain, absent express permission of the Tribunal.  *See* Dkt. No. 24 ¶¶ 6–7 (Decl. of Richard Hornshaw); *see also* May 27 Decl. of Richard Hornshaw ¶¶ 3–4.  Bloomberg thus effectively concedes that unsealing the UK Complaint would make it available not only years (and likely several years) before it otherwise might be, but in a manner in which it may never become available in the UK.  The existence of Rule 49 further militates against disclosure at this early stage because it would undermine the UK Employment Tribunal's powers and procedures in

this respect and deny parties (and other persons identified in the documents) the ability to seek protection under those powers.

DK has more than satisfied its burden to show that the UK Complaint should remain under seal, including under Bloomberg's own case law. *See Upper Brook*, 2023 WL 172003, at *8 ("To avoid the disclosure of documents that are potentially treated as confidential in the [foreign jurisdiction] . . . the Court concludes that the summonses, [] shall remain under seal.").[2]

*Third*, Bloomberg contends that the protection of DK's commercially sensitive information cannot justify sealing, claiming that the Court should deny sealing absent an "evidentiary showing that the information . . . is a trade secret." Dkt. No. 27 at 4.  That is not the relevant standard.   Rather, this Court routinely grants sealing of commercially sensitive information.  *See, e.g.*, *Pizzaro* v. *Sazerac Co.*, 2026 WL 296593, at *2 (S.D.N.Y. Feb. 3, 2026) ("Courts in this district routinely permit parties to seal or redact commercially sensitive information to protect confidential business interests and financial information." (cleaned up)); *Kewazinga Corp.* v. *Microsoft Corp.*, 2021 WL 1222122, at *6–7 (S.D.N.Y. Mar. 31, 2021) (sealing where the release of confidential information "could allow competitors" to gain advantage).  DK's interest in maintaining confidentiality is reinforced by the parties' contractual commitment to resolve disputes through confidential arbitration.  Bloomberg's request would also undermine that bargained-for confidentiality.

In any event, Bloomberg relies exclusively on two inapposite decisions in which courts declined to protect commercially sensitive information because that information was stale and many years old.  For instance, in *Alcon Vision, LLC* v. *Lens.com*, the court declined to seal pricing policies from 2016 or earlier that had "long since been discontinued."  2020 WL 3791865, at *8 (E.D.N.Y. July 7, 2020).  Similarly, in *Valassis Communications, Inc.* v. *News Corp.*, the court found that the sealing movant was no longer a participant in the market to which certain confidential documents related and declined to seal "five to ten year-old financial metrics of a closed business unit."  2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020).

Here, unlike in either of those cases, DK is seeking sealing and/or redaction of commercially sensitive information that bears on the present.  The allegations in the UK Complaint (and substantive references to it in other documents) concern both currently applicable and recent governance and strategic decisions, when and how DK chooses to enter certain markets, descriptions of current compensation practices, portfolio management strategy and decision making, and references to the now-operative Partnership Agreement. *See* Dkt. No. 22 at 2–3.  This includes, among other things, the firm's allocation of decision-making authority among its principals and the specific compensation and economic terms governing the partnership today. *Id.* Unlike the information the courts declined to seal in *Alcon* and *Valassis*, the material DK is seeking to seal and/or redact is current and operative—not many years old and otherwise stale or irrelevant to current operations.  Bloomberg's sole authorities on this point are inapplicable to present facts.

---

[2]    Even if this Court were to order targeted access to other materials filed in support of the 1782 application, it need not order the unsealing of the UK Complaint itself, which is a nonpublic filing in the UK Employment Tribunal, and whose wholesale disclosure would undermine the procedures of that forum, which should decide such matters itself.

*Fourth*, Bloomberg contends that third party privacy interests do not warrant sealing. Again, Bloomberg is wrong. It is well settled that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation," and "[s]uch interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1050-51 (citations omitted). Courts in this district have found that redacting third party names is appropriate where the "degree of potential injury is high" for third parties, who "will not have the opportunity to test the reliability of the information contained in these materials nor respond adequately to any inferences that might be drawn on the basis of this information." *United States* v. *Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019). Sealing is particularly appropriate where, as here, the "information has minimal relevance to the Court's decision." *SEC* v. *Ripple Labs, Inc.*, 2022 WL 17751466, at *3 (S.D.N.Y. Dec. 19, 2022).

Again, Bloomberg's cases are readily distinguishable, in that each involved courts declining to redact the names of third parties because the information about them was already public. For example, in *United States* v. *Basciano*, 2010 WL 11679716, at *3 (E.D.N.Y. May 12, 2010), the court declined to seal a high-profile criminal defendant's son's name because "the public is already aware that [Defendant] has a minor son and that [Defendant] has publicly asked the court to facilitate visits with him." *Id.* at *3. Similarly, in *Lytle* v. *JPMorgan Chase*, 810 F. Supp. 2d 616 (S.D.N.Y. 2011), this Court declined to seal employee names in part because those names were "already in the public record" as part of earlier unsealed filings. *Id.* at 626. Here, unlike in *Basciano* and *Lytle*, the non-party DK employees named in the UK complaint have not been publicly identified already, and the information the UK Complaint discloses about them is both traditionally private and totally irrelevant to the Court's decision.

\*            \*            \*

For the foregoing reasons, DK respectfully requests that the Court order the sealing of (1) the Partnership Agreement (Dkt. 5-4); (2) the UK Complaint (Dkt. 5-3); and (3) materials that reveal by reference the substantive content of either, including commercially sensitive information and information treated as non-public in a foreign jurisdiction (Dkt. Nos. 3, 4, 5-1, and 5-2). At a minimum, DK respectfully requests that the Court provisionally seal the materials pending further briefing. There is no urgency in this matter: the UK Proceeding is in its nascent stages, and discovery in that forum is unlikely to proceed until 2028. Moreover, as DK will set forth in its Opposition to Petitioner's Application, there is substantial reason to believe that Petitioner filed his Application not to advance a legitimate litigation need, but to generate publicity. US Courts should not be used as a tool for such gamesmanship and provisional sealing is warranted to preserve the status quo while DK presents its arguments in full.

To the extent the Court requires a more complete record, DK respectfully requests the opportunity to address these issues in a conference with the Court. *See* Dkt. No. 22 at 3.

Respectfully submitted,

*/s/ Gregory F. Laufer*
Gregory F. Laufer

cc:     All counsel of record (via ECF)