**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*Michael Herzog*,

                Petitioner,

      v.

*Davidson Kempner Capital Management LP*,

                Respondent.

Case No. 1:26-mc-00159-VSB-OTW

**RESPONDENT DAVIDSON KEMPNER CAPITAL MANAGEMENT LP'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S**
**28 U.S.C. § 1782 APPLICATION TO OBTAIN DISCOVERY**
**<u>FOR USE IN A FOREIGN PROCEEDING</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 5

I.    Herzog's 24-Year Tenure at DK. ................................................................................ 5

II.   Herzog's Departure, the Failed Mediation, and His Decision Not to Arbitrate ................ 5

III.  Herzog's U.K. "Data Subject Access Request." ........................................................... 6

IV.   The U.K. Action and the Pending Jurisdictional Challenges .......................................... 6

V.    Herzog's Section 1782 Application and Resulting Press Coverage. ............................... 7

ARGUMENT ......................................................................................................................... 8

I.    This Court Should Exercise Its Broad Discretion to Deny Herzog's Application
      Because It Was Not Made in Good Faith. ..................................................................... 8

II.   The *Intel* Factors Weigh Heavily Against the Application ........................................... 11

      A.    *Intel* Factor One: Because the Subpoenas Seek Information Obtainable in
            the U.K. Action There Is No Need for Section 1782 Assistance. ....................... 11

      B.    *Intel* Factor Two: The Procedural Posture of the U.K. Action Makes the
            Section 1782 Application Premature. ............................................................. 14

      C.    *Intel* Factor Three: Herzog Seeks to Preempt Rulings on Discovery by the
            English Tribunal. ......................................................................................... 16

      D.    *Intel* Factor Four: The Subpoenas Are Unduly Burdensome and Intrusive. ......... 17

III.  If the Court Ultimately Allows Discovery, It Should Order Herzog to Bear the
      Costs of Compliance. ............................................................................................... 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros.* v. *Standard Chartered Int'l (USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011).................................................................. 20

*In re Application of Mammoet Salvage, B.V.*,
2025 WL 3009507 (S.D.N.Y. Oct. 28, 2025) ........................................................ 12

*In re Associacão dos Profissionais dos Correios*,
2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024)........................................................ 3

*Banoka S.à.r.l.* v. *Elliott Mgmt. Corp.*,
148 F.4th 54 (2d Cir. 2025)................................................................................ 8, 18

*Brandi-Dohrn* v. *IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)...................................................................................... 10

*In re Brookfield Infrastructure Partners L.P.*,
2025 WL 1503942 (S.D.N.Y. May 27, 2025)........................................................ 15

*In re Application of Elvis Presley Enters. LLC for an Ord. to Take Discovery
Pursuant to 28 U.S.C. § 1782*,
2016 WL 843380 (S.D.N.Y. Mar. 1, 2016)......................................... 13, 16, 17

*In re Evenstar Master Fund SPC*,
2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ...................................................... 13

*Frasers Grp. PLC* v. *Stanley*,
95 F.4th 54 (2d Cir. 2024)...................................................................................... 12

*Gorsoan Ltd.* v. *Bullock*,
652 F. App'x 7 (2d Cir. 2016)......................................................................... 12, 14

*In re Hansainvest Hanseatische Inv.-GmbH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018)................................................................... 20

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)................................................................................................ 16

*In re Iraq Telecom*,
2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) ..................................................... 18

*Jiangsu Steamship Co.* v. *Success Superior Ltd.*,
2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015)......................................................... 15

*Khrapunov* v. *Prosyankin*,
  931 F.3d 922 (9th Cir. 2019)..................................................................................... 11

*In re King Baby Marine LLC*,
  2017 WL 6940563 (S.D.N.Y. Dec. 22, 2017)........................................................... 15

*Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018).................................................................................... 11

*In re Kreke Immobilien KG*,
  2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by*
  *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019)................................................. 15, 16, 17

*Mangouras* v. *Squire Patton Boggs*,
  980 F.3d 88 (2d Cir. 2020)...................................................................................... 16

*Mees* v. *Buiter*,
  793 F.3d 291 (2d Cir. 2015)............................................................................. 8, 11, 14

*In re Novalpina Cap. Partners I GP S.A.R.L.*,
  2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025)........................................................... 13

*In re Pidwell*,
  2022 WL 192987 (S.D.N.Y. Jan. 21, 2022).............................................................. 14

*In re Pilant*,
  2025 WL 2673883 (E.D.N.Y. Sept. 18, 2025)........................................................... 18

*In re Postalis*,
  2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018).................................................... 8, 13, 17

*In re Republic of Türkiye*,
  2025 WL 2200159 (S.D.N.Y. Aug. 1, 2025).............................................................. 8

*In re Saul Klein*,
  2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023), *aff'd sub nom. Klein* v. *Altara
  RK Invs. Ltd.*, 2025 WL 560105 (2d Cir. Feb. 20, 2025)........................................... 18

*In re Ex Parte Shagang Shipping Co.*,
  2014 WL 1744264 (S.D.N.Y. Apr. 28, 2014)............................................................ 15

*In re Steinmetz*,
  2022 WL 170851 (S.D.N.Y. Jan. 19, 2022).............................................................. 19

*In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. De C.V.*,
  2026 WL 772944 (S.D.N.Y. Jan. 28, 2026), *R&R adopted*, 2026 WL 768850
  (S.D.N.Y. Mar. 18, 2026)....................................................................................... 13

iii

**Statutes**

28 U.S.C. § 1782 .................................................................................................................. 1, 8

**Other Authorities**

*The Dark Side of 1782: Defending Against Aggressive U.S. Discovery Actions*,
   Kobre & Kim LLP, News & Insights (2025),
   https://kobrekim.com/insights/client-alert/dark-side-1782-defending-against-
   aggressive-us-discovery-actions .............................................................................. 2

David Marchant, *Ex-Cayman & U.K. Partner of Davidson Kempner Files
   'Whistleblower Retaliation' Complaint After 'Dismissal,'* OFFSHOREALERT
   (Apr. 20, 2026), https://www.offshorealert.com/ex-cayman-u-k-partner-of-
   davidson-kempner-files-whistleblower-retaliation-
   complaint/?srsltid=AfmBOoofyjES EAyu4i3W3BRmF-
   an7CmrzVyxfZ_baG21JT81GcQKSg5AZ............................................................. 7

Donal Griffin, *Davidson Kempner Ex-Trader Says He Blew Whistle, Was Ousted*,
   BLOOMBERG (Apr. 21, 2026),
   https://www.bloomberg.com/news/articles/2026-04-21/davidson-kempner-ex-
   partner-says-he-blew-whistle-was-forced-out........................................................ 7

Fed. R. Civ. P. 26(b)(1) ......................................................................................... 19

Respondent Davidson Kempner Capital Management LP ("DK" or the "Firm") submits this memorandum of law in opposition to Petitioner Michael Herzog's application for an order under 28 U.S.C. § 1782 to obtain discovery for use in a foreign proceeding (the "Application"). The Application should be denied. In the alternative, and at a minimum, the Application should be stayed pending the London Central Employment Tribunal of England and Wales's (the "English Tribunal") initial case-management conference, currently scheduled for November 2027.

## PRELIMINARY STATEMENT

The Application is not a *bona fide* effort to obtain discovery in aid of a foreign proceeding. Quite the opposite. The Application—much like the underlying foreign proceeding itself—is squarely in service of a misguided public-relations campaign initiated by Herzog against DK, where he worked for almost 24 years, much of that time as a partner and a leader of the Firm's London office. Herzog's sole aim is to embarrass and damage his former employer. The Application is made in bad faith, and is otherwise incompatible with the *Intel* factors.

The Application is also an end-run around the parties' contractually agreed dispute resolution process. Under the partnership agreements governing Herzog's relationship with DK, Herzog was required to submit disputes arising out of or relating to the partnership to confidential JAMS mediation to be followed by arbitration. In late 2024, Herzog told the Firm he was leaving, leading to many months of negotiations regarding certain preferential terms Herzog was seeking on departure. These negotiations eventually broke down, and Herzog invoked the first step of the contractual dispute-resolution process by submitting a mediation request asserting various allegations in an attempt to secure some perceived tactical advantage in the negotiations. But when mediation failed, Herzog did not proceed to arbitration. Instead, he circumvented his arbitration obligations by pursuing materially the same manufactured claims in a U.K. employment tribunal.

1

And then, less than three weeks later—and despite the fact that the preliminary conference in the U.K. is not scheduled until November 30, **2027**—Herzog hastily (and publicly) filed this 1782 proceeding seeking immediate U.S.-style discovery, and did so long before the English Tribunal determines what discovery, if any, is appropriate.

But the Application is not merely procedurally improper and premature—it is also pretextual, in that it was filed in an obvious effort to generate negative publicity for DK. By filing this Application, Herzog created a public federal docket for confidential partnership materials (and a forum for publicly airing his grievances) that, once again, the parties' agreements require be addressed through private and confidential dispute resolution. It is therefore not surprising to see that, as his lawyers have conspicuously refused to deny, Herzog promoted his manufactured claims in the media, generating an immediate story on what is clearly not a matter of public concern.

Abuse of the 1782 process has been the subject of commentary, including by lawyers at Herzog's very own law firm in this action. Those lawyers have recognized that Section 1782 can be misused to pursue objectives collateral to legitimate foreign discovery, including publicity and cost imposition:

> The power of Section 1782 can also embolden parties to try to use U.S. discovery to clandestinely achieve extraneous or unrelated goals in cross-border litigation, such as negative PR campaigns, pre-action discovery in aid of U.S. litigation or simply increasing litigation costs. Judges often easily grant these requests, and the uninvited intrusion this brings can cause enough trouble to hurt an individual or company's reputation, business and ultimately their bottom line.

*See The Dark Side of 1782: Defending Against Aggressive U.S. Discovery Actions*, Kobre & Kim LLP, News & Insights (2025), https://kobrekim.com/insights/client-alert/dark-side-1782-defending-against-aggressive-us-discovery-actions.

Herzog's 1782 Application is a case in point. It is transparently designed to achieve precisely such "extraneous" goals, including embarrassment, harassment, and negative press. So,

for example, while the complaint filed in the underlying U.K. action (the "U.K. Action") will remain nonpublic until 2028 or 2029 at the earliest (and possibly much longer, and even then, non-party access is a right of inspection only), the Application was filed on this Court's public docket (and immediately publicized) without any prior notice to DK.  And while the U.K. Action allows for only limited document discovery that will not begin until the end of 2027 *at the earliest*, the Application, served essentially contemporaneously with the U.K. Action, seeks immediate, far-reaching, and costly U.S.-style discovery, including an onerous Rule 30(b)(6) deposition that does not even exist in the U.K.

In sum, the circumstances surrounding the Application, and the Application itself, point precisely to the kind of gamesmanship that Congress surely did not have in mind when it enacted Section 1782.  Herzog seeks immediate U.S. discovery before the English Tribunal has even considered (much less actually addressed) disclosure; asks for broad, Firm-wide discovery—including Rule 30(b)(6) testimony that does not exist in the U.K.—and filed these proceedings publicly, notwithstanding his arbitration and confidentiality obligations and the nonpublic status of the U.K. Action.  *In re Associacão dos Profissionais dos Correios*, 2024 WL 4299019, at *6 (S.D.N.Y. Sept. 25, 2024) ("Where an applicant is attempting to use foreign litigation as a ruse for obtaining discovery for use in other foreign proceedings, the respondent can and should bring evidence of such chicanery to the Section 1782 court's attention.  Such evidence . . . might support denying the Section 1782 application altogether." (cleaned up) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017))).  The Application should be denied for these reasons alone.

But even if Herzog's Application had been filed for legitimate reasons, it should be denied based on the *Intel* factors:

*Intel* **Factor #1** looks at whether the person from whom discovery is sought is a participant in the foreign proceeding. Here, DK—the entity from which Herzog seeks U.S. discovery—is for all intents and purposes a party to the U.K. Action. Accordingly, and because Herzog can seek the same discovery he seeks here in the U.K. (to the extent compliant with U.K. procedure), relief under Section 1782 is unnecessary.

*Intel* **Factor #2** considers the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. assistance. The status of the foreign proceeding in this case, particularly the fact that it will be dormant for more than a year, makes broad and immediate U.S.-style discovery premature.

*Intel* **Factor #3** asks whether the Section 1782 Application reveals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. Here, the Application as a whole bespeaks an improper purpose and is inconsistent with both the parties' bargained-for agreements and U.K.-style discovery, which does not provide for depositions or broad discovery.

*Intel* **Factor #4** asks whether the requested subpoenas are unduly intrusive or burdensome. The discovery sought here is by any measure extraordinarily intrusive and burdensome.

Accordingly—and particularly given the Court's broad discretion—Herzog's Application should be denied. In the alternative, and at minimum, the Application should be held in abeyance pending further proceedings in the U.K. Action, including the initial case-management conference currently scheduled for November 2027.

**FACTUAL BACKGROUND**

I.      **Herzog's 24-Year Tenure at DK.**

Founded in 1983, DK is a global alternative asset manager headquartered in New York City and organized as a Delaware limited partnership.

Herzog joined DK in 2001, eventually becoming one of its most senior partners and co-head of its London office. Herzog was well compensated for his efforts.

Herzog's contractual relationships, in the form of partnership agreements, were with two particular DK affiliates: Davidson Kempner European Partners, LLP ("DKEP"), a limited liability partnership organized in England and Wales, and Davidson Kempner Solutions Cayman LP ("DK Solutions"), a Cayman Islands exempted limited partnership. Both agreements contain dispute resolution clauses that, with limited exceptions, require that all controversies be submitted first to JAMS for mediation and then, if necessary, to JAMS for arbitration.

II.     **Herzog's Departure, the Failed Mediation, and His Decision Not to Arbitrate.**

By the first half of 2024 at the latest, Herzog began to plot his exit from the Firm. Nonetheless, he waited many months to announce his departure. In fact, unbeknownst to the Firm at the time, Herzog and his personal counsel, preparing for a contentious departure, began to strategize about Herzog's exit and how he could maximize leverage against his own partners. To that end, Herzog used DK's own email servers to communicate with his counsel, collaborating on a strategy memo in which Herzog mapped out how to maximize leverage in connection with his departure and compensation demand, including by pursuing the very types of "claims" he later sought to mediate.

In October 2024—nearly six months after deciding to leave the Firm—Herzog notified DK of his intended departure and demanded DK modify the terms of its retirement program to his benefit.

5

Months of negotiations followed. Throughout that process, DK made its CFO and outside auditor relationship partner available to Herzog and his own auditor, and provided Herzog reams of material (nearly 100 documents spanning approximately 2,000 pages) that he was not entitled to. None of that was enough for Herzog.

In March 2025, Herzog, through counsel, submitted a Request for Mediation to JAMS. Notably, the Request named DK, DKEP, and DK's Managing Partner, Anthony Yoseloff, as respondents. Mediation efforts continued until June 2025, at which point Herzog unilaterally terminated the process.

### III. Herzog's U.K. "Data Subject Access Request."

In December 2025, Herzog sent DK's U.K. affiliate an expansive and cumbersome "Data Subject Access Request"—or "DSAR"—under a U.K. law that allows individuals to request documents about themselves from corporate entities. The DSAR was facially overbroad, but concerned many of the same issues raised in Herzog's Application to this Court (and both his prior mediation and the U.K. Action). At great expense and effort, DK produced nearly 7,000 documents to Herzog in April 2026.

### IV. The U.K. Action and the Pending Jurisdictional Challenges.

On April 2, 2026, Herzog filed an Employment Tribunal claim in the United Kingdom against DKEP, DK Solutions, and Yoseloff. The allegations in that action are materially the same as the allegations submitted to JAMS for mediation, but Herzog, despite having actually mediated and negotiated with DK for months, did not name DK itself as a defendant.

Since then, the DK entities named in the U.K. Action have filed what are known as Grounds of Resistance, contesting both the Tribunal's jurisdiction and the merits of Herzog's claims. The English Tribunal has not yet ruled on these challenges, and no evidence has been taken. The Tribunal's first conference—essentially an initial case-management hearing—is not

6

scheduled to occur until November 2027 at the earliest. Hornshaw Decl. ¶ 4. There will very likely be no discovery whatsoever in those proceedings until at least November 2027, and more likely 2028, or even later. *Id.*

## V.    Herzog's Section 1782 Application and Resulting Press Coverage.

Herzog filed this Application on April 20, 2026, less than three weeks after filing the U.K. Action, *see* Dkt. No. 1, and before ascertaining what facts the defendants in the U.K. Action might admit or deny, what issues might be contested, or what discovery might be allowed (or not allowed) by the English Tribunal.

The Application appended the nonpublic complaint in the U.K. Action. And while exhibits to the Section 1782 Application, including the U.K. complaint, were "provisionally" filed under seal, the Application itself was not, and the filing of the 1782 proceeding was reported in the press less than 24 hours later.[1] *See* David Marchant, *Ex-Cayman & U.K. Partner of Davidson Kempner Files 'Whistleblower Retaliation' Complaint After 'Dismissal,'* OFFSHOREALERT (Apr. 20, 2026), https://www.offshorealert.com/ex-cayman-u-k-partner-of-davidson-kempner-files-whistleblower-retaliation-complaint/?srsltid=AfmBOoofyjES    EAyu4i3W3BRmF-an7CmrzVyxfZ_baG21JT81GcQKSg5AZ; Donal Griffin, *Davidson Kempner Ex-Trader Says He Blew    Whistle,    Was    Ousted*,    BLOOMBERG    (Apr.    21,    2026), https://www.bloomberg.com/news/articles/2026-04-21/davidson-kempner-ex-partner-says-he-blew-whistle-was-forced-out. Again, under the applicable provisions of the relevant agreements, Herzog was required to arbitrate those claims, and was subject to non-disclosure and confidentiality provisions. The U.K. filing, and the filing of this Action, circumvented both.

---

[1]    Issues regarding sealing of portions of the Application and accompanying exhibits are before the Court in connection with correspondence from the parties (Dkt. Nos. 9; 22; 26) and a motion filed by non-party Bloomberg L.P. (Dkt. Nos. 27; 32).

The Application asks the Court to authorize the issuance of two subpoenas. One seeks "Documents and Communications" across 15 broad categories over more than six years (January 1, 2020 through the present). Dkt. No. 5-1. The other essentially seeks a Rule 30(b)(6) deposition covering 14 equally broad topics over the same time period. Dkt. No. 5-2.

### ARGUMENT

Section 1782, which states that courts "may" order discovery for use in foreign proceedings, allows courts broad discretion to "grant, limit, or deny" that discovery. *See Banoka S.à.r.l.* v. *Elliott Mgmt. Corp.*, 148 F.4th 54, 64 (2d Cir. 2025) (noting the "permissive language" of Section 1782). It is "well-established . . . that 'a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.'" *In re Republic of Türkiye*, 2025 WL 2200159, at *4 (S.D.N.Y. Aug. 1, 2025) (citation omitted).

### I.   This Court Should Exercise Its Broad Discretion to Deny Herzog's Application Because It Was Not Made in Good Faith.

District courts "may deny [the] section 1782 application[s] where [they] *suspect*[] that the discovery is being sought for the purposes of harassment." *Id.* at *5 (citing *Brandi-Dohrn* v. *IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) (emphasis added)). Put another way, "[a] court is free to deny the application *in toto*" where it "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees* v. *Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (citation omitted); *see also In re Postalis*, 2018 WL 6725406, at *3–5 (S.D.N.Y. Dec. 20, 2018) (denying a § 1782 application filed by Kobre & Kim LLP on a finding that the application was filed for an improper purpose).

The circumstances here firmly reflect Herzog's bad faith, including the facts that Herzog circumvented contractual confidentiality and non-disclosure provisions; that press coverage followed almost immediately after filing; that there was no imminent discovery deadline

8

in the U.K. Action; that the English Tribunal had not ordered disclosure; and that Herzog already had received nearly 7,000 documents through the DSAR process.[2]

More specifically, there is no need for this proceeding in the first place. Herzog has painted the Application as an effort to secure discovery in the U.K. Action. But that is pure fiction, and there will be no discovery in the U.K. for a very long time: the preliminary conference in that action is not scheduled to occur before November 30, 2027, as Herzog acknowledged in the Application. *See* Dkt. No. 3 at 7. And Herzog can obtain all the discovery he would be entitled to in that action because the U.S. entity that Herzog is seeking discovery from in this Court is directly affiliated with the DK entity he has sued in the U.K., and the discovery he wants from the U.S. entity is the same discovery he could seek from the U.K. entity.

The circumstances strongly suggest that the main (if not only) reason Herzog filed this Application was to publicize the allegations made in the U.K. Action, which are currently nonpublic there. *See* Dkt. Nos. 24 & 33. Further proof of this point rests in the fact that a former long-time senior partner of the Firm knows exactly how the Firm works, and understands that if someone seeks discovery from a U.K. affiliate, it does not matter if the Firm's email servers are technically located in one jurisdiction or another. Indeed, when Herzog pursued his DSAR demands directed to DK's U.K. affiliate, the Firm did not take the position that it did not need to respond because the relevant materials were in the U.S.

The way Herzog went about filing the Application is further evidence of his bad faith. He commenced this action without prior notice to DK, and filed it on the Court's public docket with redactions he made unilaterally, without filing the entire action under seal, and then

---

[2]    Notably, Herzog's counsel, early on in the dispute—and despite Herzog being subject to mandatory arbitration and confidentiality provisions—specifically threatened public litigation and press exposure in correspondence with DK's counsel, clearly contemplating the improper and vindictive publicity-driven strategy now being deployed.

9

asking the Court to thereafter publicly file certain documents subject to negotiated redactions. That is the conventional path that litigants with genuine concerns about the disclosure of proprietary, sensitive, or confidential materials follow all the time. Nor was there any urgency requiring Herzog to file the Application immediately. As noted in the Application itself at the time it was filed, nothing was going to happen in the U.K. Action for another 18 months.

The timing of the press coverage of the 1782 proceedings in the immediate wake of filing is additional evidence of Herzog's bad faith. Within hours of the Application being filed, an article appeared in the online publication *OffshoreAlert*. That was followed by a *Bloomberg* piece the very next day. It is hard to fathom how the press could have picked up the "story" so quickly without Herzog's deliberate efforts to shop it around. After all, the dispute here is not one of general public concern; it is a dispute between a private partnership and a former senior partner. Since then, DK's counsel has repeatedly asked Herzog's counsel whether Herzog had alerted the press to the Application. Herzog's counsel has dodged the question, and has certainly not denied it.

Finally, one need only look at the materials Herzog attached to the Application as evidence of his improper purpose. Most notably, he included an agreement supplementing DKEP's partnership agreement—the seminal document setting out the Firm's governance—even though Herzog does not explain why public filing of that governance document was necessary to the discovery relief he seeks. The only credible inference is that Herzog was hoping that that document would itself be made public.

For all these reasons, Herzog's Application should be denied as the product of a bad-faith effort to misuse Section 1782. *See Brandi-Dohrn*, 673 F.3d at 81 ("Our cases acknowledge that a district court may deny the section 1782 petition where it suspects that the

10

discovery is being sought for the purposes of harassment."). And, to the extent the Court believes there are questions of fact concerning the circumstances of Herzog's filing of the Application, the Court may order discovery, a hearing, or both. *See Khrapunov* v. *Prosyankin*, 931 F.3d 922, 925–26 (9th Cir. 2019) (remanding for a district court to exercise its broad discretion and engage in fact-finding about the application and applicability of the *Intel* factors).

## II.    The *Intel* Factors Weigh Heavily Against the Application.

The Application should in any event be denied based on the *Intel* factors, which consider: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; . . . (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees*, 793 F.3d at 298 (quoting *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)). The Second Circuit has held that "[t]he *Intel* factors are not to be applied mechanically" and that "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

### A.    *Intel* Factor One: Because the Subpoenas Seek Information Obtainable in the U.K. Action There Is No Need for Section 1782 Assistance.

Under the first *Intel* factor, the Court considers "whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent.'" *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264–65). In the Second Circuit, this factor is often framed as an inquiry into "whether the information sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid."

11

*Gorsoan Ltd.* v. *Bullock*, 652 F. App'x 7, 8 (2d Cir. 2016).  "[C]ourts evaluating [] [*Intel*] factor [one] should look not to the literal subpoena recipient but rather to the 'real party from whom the documents are sought.'"  *In re Application of Mammoet Salvage, B.V.*, 2025 WL 3009507, at *15 (S.D.N.Y. Oct. 28, 2025) (citation omitted); *see also Frasers Grp. PLC* v. *Stanley*, 95 F.4th 54, 59 (2d Cir. 2024) (denying § 1782 application where petitioner "'for all intents and purposes' seeks discovery from . . . its opponent in the English Proceedings" (citation omitted)).

The Application here on its face seeks information from DKEP and DK Solutions, opponents in the foreign litigation, and those parties are by definition within the foreign tribunal's reach.  Specifically, the Application seeks documents and 30(b)(6) testimony relating to "the Firm," which the Subpoenas themselves define to include "the global Davidson Kempner organization comprised of multiple fund entities and operating companies, including, but not limited to . . . DKEP . . . and DK Solutions."  Dkt. Nos. 5-1 & 5-2.  Herzog, in other words, is explicitly seeking documents and testimony from the Defendants in the U.K. Action, their affiliates, and the same broader "Firm" that he has put at issue in the U.K. Action and in his proposed subpoenas.

As a result, and although DK is not formally named in the U.K. Action, Herzog's own subpoenas and definitions treat DK, DKEP, DK Solutions, and the broader Davidson Kempner enterprise as interconnected sources of the same information.  That is the practical inquiry under *Intel* Factor One: whether the evidence could be sought through the foreign proceeding, not whether the subpoena target appears in the foreign caption.

Moreover, and even if the 1782 Application were not an improper vehicle for prematurely obtaining documents from the entities and affiliates within the practical reach of the foreign proceeding, courts in this District have held that "when a subsidiary is a party to a foreign

12

proceeding and the parent is the discovery target, the first *Intel* factor weighs against granting the requested discovery because the evidence sought is within the foreign tribunal's jurisdictional reach." *In re Postalis*, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018) (finding the first *Intel* factor supports denial of § 1782 application because, although "BNY Mellon is not, itself, a participant in the foreign proceeding . . . the BNY Mellon subsidiaries are."); *see also In re Application of Elvis Presley Enters. LLC for an Ord. to Take Discovery Pursuant to 28 U.S.C. § 1782*, 2016 WL 843380, at *3 (S.D.N.Y. Mar. 1, 2016) (holding that the first *Intel* factor weighed against an application because, "[a]lthough SME is not a party to the German proceeding, . . . its wholly-owned subsidiary [is]" and therefore "has access to the documents and information held by SME."); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. De C.V.*, 2026 WL 772944, at *6 (S.D.N.Y. Jan. 28, 2026), *R&R adopted*, 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026) (denying § 1782 application because "the first *Intel* Factor counsels against permitting [p]etitioners to obtain discovery from A&M of documents and information available to A&M solely because A&M Mexico is its subsidiary."). Herzog's own Application does not identify any specific category of evidence uniquely held by DK and unavailable through the U.K. Action. To the contrary, the proposed subpoenas define the relevant entities collectively and seek discovery concerning the same "Firm" before the English Tribunal.

Herzog's cases to the contrary are all distinguishable. *First*, *In re Evenstar Master Fund SPC* did not concern a parent-affiliate relationship—it instead focused on an individual. 2021 WL 3829991, at *11–12 (S.D.N.Y. Aug. 27, 2021). *Second*, the petitioner in *Novalpina* expressly alleged that the subsidiary Section 1782 respondent had documents that the parent foreign litigant did not. *In re Novalpina Cap. Partners I GP S.A.R.L.*, 2025 WL 1160854, at *23–24 (S.D.N.Y. Apr. 21, 2025). Herzog has made no such argument or showing, and indeed his own

mediation, DSAR, and proposed subpoena drafting do not delineate between DK entities in any way, treating each as substantively identical to the others. *Third*, the court in *In re Pidwell* found that the parent could "have relevant documents that are within its, and not its subsidiary's, possession." 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022). Again, Herzog makes no such claim—nor could he—and doing so would be wholly inconsistent with his own mediation, DSAR, and proposed subpoenas.

The English Tribunal has the power to order discovery from DKEP and DK Solutions, and the discovery sought through this Application does not distinguish between these entities and DK. As a result, "the information sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." *Gorsoan*, 652 F. App'x at 8. The first *Intel* factor therefore weighs strongly against the Application because Herzog has not shown that the evidence he seeks is outside the English Tribunal's practical reach or otherwise unavailable through the U.K. Action.

### B.    *Intel* Factor Two: The Procedural Posture of the U.K. Action Makes the Section 1782 Application Premature.

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264–65). This factor likewise weighs against the Application because discovery in the U.K. Action is not even underway. Herzog filed the U.K. Action in early April 2026, and the Tribunal's first conference is not scheduled to occur until November 30, 2027. Hornshaw Decl. ¶ 4; Dkt. Nos. 24; 33. The English Tribunal has not ruled on the Tribunal respondents' jurisdictional challenges, has issued no case management or disclosure orders, and has not taken

(or sought) any evidence. Hornshaw Decl. ¶ 4. Nor has the English Tribunal indicated that evidence from DK is necessary, relevant, or unavailable through the Tribunal's own procedures.

Courts in this District routinely refuse to apply Section 1782 where doing so would be premature. *See, e.g.*, *In re Ex Parte Shagang Shipping Co.*, 2014 WL 1744264, at *2–3 (S.D.N.Y. Apr. 28, 2014) (vacating § 1782 order where underlying London action was in its early phase and the relevant issue had not yet been reached by the English court: "the Subpoenas are not appropriate at this time"); *Jiangsu Steamship Co.* v. *Success Superior Ltd.*, 2015 WL 3439220, at *8 (S.D.N.Y. Feb. 5, 2015) (denying premature § 1782 application: "sufficient unto the day— which today is not"); *In re King Baby Marine LLC*, 2017 WL 6940563, at *2–3 (S.D.N.Y. Dec. 22, 2017) (similar).

Ordering sweeping U.S. discovery (or indeed any U.S. discovery) before the English Tribunal has taken any steps to address disclosure would not serve § 1782's purposes. *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (warning that "[i]t would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority," and emphasizing that the petitioner had "filed a § 1782 application in this [c]ourt without even giving the [foreign] tribunal any opportunity to rule"), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

Nor can Herzog meaningfully show that the English Tribunal—which has not yet spoken at all—would be receptive to evidence obtained through the discovery he proposes. *See In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942, at *10 (S.D.N.Y. May 27, 2025) ("If a Section 1782 applicant . . . is not in a position to have a foreign tribunal consider the requested evidence, or if the sought-after information would be of no use in the foreign proceeding, there

15

would be no need in the interests of comity for a United States court to lend its hand . . . ." (citation omitted)).

The procedural posture of the U.K. Action compounds the problem. At minimum, that posture supports a stay: there is no reason for this Court to supervise broad U.S. discovery before the English Tribunal determines whether the U.K. Action will proceed and what disclosure, if any, is appropriate. The respondents in the U.K. Action have filed Grounds of Resistance identifying substantial threshold defects in Herzog's claims. Hornshaw Decl. ¶ 4. The English Tribunal is unlikely to rule on these defects prior to the November 2027 initial case-management hearing at the earliest, and more likely not until some point thereafter. *Id.* If those challenges are sustained and the claims dismissed, the discovery ordered here will have been entirely unnecessary, and DK will have borne a substantial burden for no good reason. *See Elvis Presley*, 2016 WL 843380, at *4 (second *Intel* factor disfavored discovery due to the procedural posture of the foreign proceedings). Herzog's effort to extract extensive U.S. discovery at this stage of the U.K. Action in no way serves the "twin aims" of § 1782. *Mangouras* v. *Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020). The second *Intel* factor also weighs heavily against the Application and, at minimum, warrants a stay until the English Tribunal addresses threshold jurisdiction and disclosure issues.

C.    ***Intel* Factor Three: Herzog Seeks to Preempt Rulings on Discovery by the English Tribunal.**

The third *Intel* factor asks whether a § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 265. In applying this factor, courts have held that a petitioner may not use § 1782 as an "attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *Kreke*, 2013 WL 5966916, at *6 (quoting *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y.

16

2006)), *abrogated on other grounds by Valle Ruiz*, 939 F.3d. Nor can § 1782 be used "'as a vehicle to avoid . . . an unfavorable discovery decision' from a foreign tribunal." *Kreke*, 2013 WL 5966916, at *6 (quoting *Microsoft*, 428 F. Supp. 2d at 196).

Here, the scope and timing of Herzog's requests make clear that the Application is part of an effort to preempt discovery procedures applicable to the foreign proceeding he himself brought. Among other things, Herzog requests 30(b)(6) deposition testimony, Dkt. No. 5-2, a U.S.-style discovery device that the English Tribunal has not authorized—and does not authorize—and that would allow Herzog to obtain testimony before the Tribunal has determined whether any particular evidence is relevant, necessary, or appropriate. Hornshaw Decl. ¶ 3. Further, the Application's broad document discovery requests are incompatible with principles of international comity because they attempt to preempt the English Tribunal's ability to decide what constitutes appropriate discovery pursuant to Rule 30 of the Employment Tribunal Procedure Rules. *Id.* ¶ 4; *see also Postalis*, 2018 WL 6725406, at *5 (denying application where discovery was sought for an improper purpose); *supra* Argument Section I.

### D.     *Intel* Factor Four: The Subpoenas Are Unduly Burdensome and Intrusive.

The fourth *Intel* factor considers "the familiar standards of Rule 26," which (1) provide that the scope of any discovery be limited to "'relevant' material that is 'proportional to the needs of the case'" and (2) call for an inquiry into "'whether the burden or expense of the proposed discovery outweighs its likely benefit,' among other factors." *Elvis Presley*, 2016 WL 843380, at *5 (quoting *Mees*, 793 F.3d at 302).

The proposed subpoenas here are facially inconsistent with Rule 26's proportionality and burden limitations. The document subpoena seeks "Documents and Communications" across 15 sweeping categories with a defined "Relevant Time Period" spanning more than six years (January 1, 2020 through the present), and the subpoena for deposition

17

testimony seeks Rule 30(b)(6) corporate testimony on 14 similarly sweeping topics over that same six-year period. *See* Dkt. Nos. 5-1 & 5-2. Almost all the document requests seek "Documents and Communications" "relating to," "reflecting," or "concerning" an entire subject area, and the deposition topics are equally expansive—precisely the kinds of "blanket requests" that courts in this Circuit routinely reject as facially overbroad. Dkt. Nos. 5-1 & 5-2; *compare In re Pilant*, 2025 WL 2673883, at *6 (E.D.N.Y. Sept. 18, 2025) ("'Blanket requests' which seek all materials in Respondents' possession that mention, discuss, or concern Petitioner . . . 'are plainly overbroad and impermissible.'" (citation omitted)), *and Banoka*, 148 F.4th at 59, 69 (affirming denial where document requests "encompassed virtually any documents possessed by the [respondents] that might be related to the [transaction]" and were therefore "expansive" and "unduly broad"), *with In re Iraq Telecom*, 2019 WL 3798059, at *5 (S.D.N.Y. Aug. 13, 2019) (Wang, M.J.) (finding requests *not* unduly burdensome only where "there [was] no concern that the discovery [was] being sought for harassment").

Herzog's sweeping definitions compound the problem. As noted above, DK, referred to by Herzog as "DKCM," is defined as not only the entity itself, but also "any agent or representative, officer, director, member, employee, or partner thereof." And "the Firm" is defined as the "global Davidson Kempner organization comprised of multiple fund entities and operating companies, including, but not limited to, DKCM, DKEP, DKIL, and DK Solutions." Dkt. Nos. 5-1 & 5-2. Many of the requests seek documents and communications regarding broad and arbitrary topics that would sweep in internal records across multiple Davidson Kempner entities, personnel, and jurisdictions over a period of more than six years. *See In re Saul Klein*, 2023 WL 8827847, at *13 (S.D.N.Y. Dec. 21, 2023) (subpoenas "seeking '[a]ll documents and communications' from 12 financial institutions relating to 26 entities covering an almost 11-year period—are extremely

18

broad") (citation omitted), *aff'd sub nom. Klein* v. *Altara RK Invs. Ltd.*, 2025 WL 560105 (2d Cir. Feb. 20, 2025). Sweeping discovery is also undermined by the above-referenced posture of the U.K. Action. The fourth *Intel* factor incorporates Rule 26's proportionality inquiry, which requires the Court to assess, among other things, "the importance of the discovery in resolving the issues" and whether "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Those questions have not been asked (and certainly cannot be answered) at this stage of the U.K. Action.

The burden is not abstract: compliance would require DK to identify custodians across multiple affiliates, collect and review years of ESI, assess privilege and confidentiality issues across jurisdictions, and prepare a corporate representative on broad topics concerning the Firm. In fact, given the breadth and lack of specificity in the proposed subpoenas, the burden and costs associated with responding to the requests are at this point not even quantifiable with any degree of certainty.

Nor can these requests be reasonably tailored, in that the subpoenas' overbreadth is not at the margins; it is structural and irremediable. Herzog effectively demands a complete record of how DK has been run for the past six years, retracing every "concern" he allegedly raised internally during his tenure. Section 1782 requests that are so untethered to discrete, identifiable categories of relevant evidence should be denied in their entirety, not redrafted. *See In re Steinmetz*, 2022 WL 170851, at *7 (S.D.N.Y. Jan. 19, 2022) ("The requests are so overbroad" that it would not "be possible for the Court to 'issu[e] a closely tailored discovery order [instead of] simply denying relief outright.'" (quoting *Mees*, 793 F.3d at 302)).

## III.    If the Court Ultimately Allows Discovery, It Should Order Herzog to Bear the Costs of Compliance.

Finally, if the Court does issue subpoenas in any form, it should require Herzog to

19

bear the full costs of DK's compliance.  *See supra* Argument Section II.D (detailing substantial burdens of Herzog's proposed subpoenas under *Intel* factor four); *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (ordering 1782 discovery "only to the extent that the [a]pplicants [] assume the costs of the document production"); *Ahmad Hamad Algosaibi & Bros.* v. *Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 435 (S.D.N.Y. 2011) (ordering petitioner to bear full costs).  No discovery should be issued until after the English Tribunal's initial case-management conference and any ruling on jurisdiction and disclosure.

**CONCLUSION**

The Court should deny Herzog's Application.  In the alternative, the Court should stay the Application pending the English Tribunal's initial case-management conference, currently scheduled for November 2027 at the earliest, and any subsequent ruling on jurisdiction and disclosure.

Dated: New York, New York
      June 25, 2026

      PAUL, WEISS, RIFKIND, WHARTON &
      GARRISON LLP


By: /s/ *Roberto Finzi*
    Roberto Finzi
    Gregory F. Laufer
    Phoebe H. King
    1285 Avenue of the Americas
    New York, New York  10019-6064
    Tel. (212) 373-3000
    Fax (212) 757-3990
    rfinzi@paulweiss.com
    glaufer@paulweiss.com
    pking@paulweiss.com

    *Counsel for Davidson Kempner Capital*
    *Management LP*

20

## CERTIFICATE OF COMPLIANCE

I, Roberto Finzi, certify that this Memorandum of Law in Opposition to Petitioner's 28 U.S.C. § 1782 Application to Obtain Discovery for Use in a Foreign Proceeding complies with the word-count limitations contained in Local Rule 7.1(c) of the Joint Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York and Rule V.d of Magistrate Judge Wang's Individual Practices in Civil Cases. Excluding the caption, table of contents, table of authorities, signature blocks, and required certificates, this Memorandum contains 6,138 words.

Dated: New York, New York
       June 25, 2026

By: /s/ *Roberto Finzi*
    Roberto Finzi

21