**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re Application of                                      :

                                                         :

MICHAEL HERZOG,                                          :            26-mc-0159 (VSB) (OTW)

                                                         :

                    Petitioner,                          :            <u>**OPINION & ORDER ON**</u>
                                                         :            <u>**SEALING MOTION**</u>
For an Order to Obtain Discovery Pursuant to             :
28 U.S.C. § 1782 for Use in a Foreign                    :
Proceeding.                                              :

                                                         :

------------------------------------------------------------x

          **ONA T. WANG**, **United States Magistrate Judge**:

## I.       INTRODUCTION

In this action, Petitioner Michael Herzog ("Petitioner") seeks discovery for use in a

foreign proceeding pursuant to 28 U.S.C. § 1782 ("Section 1782"). Currently before the Court is

David Kempner Capital Manager LP's ("Respondent") motion to seal Petitioner's Memorandum

of Law and two attorney declarations with attachments (the "Moving Papers) filed in support of

his Section 1782 Petition. (Unsealed, redacted form at ECF Nos. 3-5; sealed, unredacted form at

ECF Nos. 10 – 12). Petitioner does not take a position on sealing the Moving Papers but filed a

motion to maintain them provisionally under seal to permit Respondent the opportunity to file

a motion to seal. (ECF 9). After Respondent also filed a sealing motion, (ECF 22), non-party

Bloomberg News LLP ("Bloomberg") entered an appearance and filed a letter which the Court

construes to be a combined opposition to Respondent's sealing motion and a cross-motion to

unseal the Moving Papers. (ECF 27). For the reasons that follow, Petitioner's and Respondent's

motions to provisionally seal and to maintain under seal, the Moving Papers (ECF Nos. 9; 22,

respectively), are **DENIED**; Bloomberg's motion to unseal, (ECF 27), is **GRANTED**, and the

unredacted version of the Moving Papers, filed under seal at ECF Nos. 10-12, including all attachments, are **UNSEALED**.

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

The Court assumes familiarity with the facts underlying the Petition but briefly summarizes the facts relevant to sealing here.

Petitioner was formerly employed by Davidson Kempner European Partners, LLP ("DKEP"), a non-U.S. affiliate entity of Respondent. (Naftalin Decl., ECF 11 ¶ 6). On April 2, 2026, Petitioner filed a Claim Form and Grounds of Complaint in the Employment Tribunal for the High Court of England and Wales (the "English Action"). (*See* U.K. Compl., ECF Nos. 12-3, 12-4). In the English Action, Petitioner alleges that, *inter alia*, he was forced to retire from DKEP and that DKEP took other retaliatory action against him as a result of what he purports to be "corporate whistleblowing" activities. (Naftalin Decl., ECF 11 ¶ 12). An initial case management conference in the English Action is set for November 30, 2027. (*Id*. ¶ 9).

On April 20, 2026, Petitioner filed the instant Petition which seeks: 1) documents and testimony reflecting the "corporate whistleblowing" activities and the events they concern; and 2) documents and testimony reflecting the allegedly retaliatory actions that DKEP carried out against Petitioner. (*Id*. ¶¶ 14-17).

In support of the Petition, Petitioner redacted the Moving Papers, which consist of: a Memorandum of Law, (ECF 3); a Declaration from a U.K. solicitor, Daniel Naftalin, (ECF 4); and a Declaration from his attorney here, Zachary Rosenbaum, (ECF 5). Attached to the Rosenbaum Declaration, also heavily or entirely redacted, are: 1) a proposed document production subpoena, (ECF 5-1); 2) a proposed Rule 30(b)(6) deposition subpoena, (ECF 5-2); 3) the

2

complaint Petitioner filed in the English Action (the "U.K. Complaint"), (ECF 5-3); 4) a partnership agreement attached to the U.K. Complaint (the "Partnership Agreement"), (ECF 5-4); and 5) an unredacted "SEC Info page." (ECF 5-5).

Petitioner filed neither a motion to seal nor unredacted, provisionally sealed Moving Papers until a week after filing the Petition. (*See* ECF Nos. 9; 10–12). Petitioner takes no position on sealing but filed the redacted Moving Papers, and, subsequently, his motion to provisionally seal the unredacted versions, "so that Respondent has the opportunity to articulate whether and to what extent it believes permanent sealing of such material is appropriate." (ECF 9).

A week later, Respondent filed a motion to seal, *under seal*, that includes what it purports to be "more limited" proposed redactions to the Moving Papers. (ECF 22). Inexplicably, the same day, Respondent filed a copy of ECF 22 with the same attachments, also under seal. *(See* ECF 23).[1]

On May 19, 2026, Bloomberg filed a letter which the Court construed as both a motion seeking to unseal the Moving Papers, specifically the U.K. Complaint, and in opposition to Respondent's motion to seal the Moving Papers. (*See* ECF 27). Bloomberg argues the Moving Papers are entitled to a strong presumption of access under both the First Amendment and common law, and that Respondent has not identified specific competing considerations sufficient to overcome that presumption. *Id*.

---

[1] No party has articulated any reason for sealing Respondent's motion(s) to seal, nor can the Court discern one. Moreover, no party has moved to seal these motions to seal. Accordingly, ECF Nos. 22 and 23 shall be unsealed.

### III.    MOTION TO SEAL

#### A.  Legal Standard

"There is a long-established 'general presumption in favor of public access to judicial documents.'" *Bernsten v. O'Reilly*, 307 F.Supp.3d 161, 165 (S.D.N.Y. 2018) (quoting *Collado v. City of New York*, 193 F.Supp.3d 286, 288 (S.D.N.Y. 2016)). Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." N*ewsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). The common law right of public access to judicial documents is based on "the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The First Amendment also secures, to both the public and the press, a right of access to civil proceedings. *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984). Generally, courts begin their analysis with the three-step common law analysis because "the test for whether a document can be sealed under the First Amendment is more stringent then under the common law. If a sealing request cannot survive the common law test, it will not survive scrutiny under the First Amendment test." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *1 (S.D.N.Y. Jan. 17, 2023), *recons. denied,* 2023 WL 3966703 (S.D.N.Y. June 13, 2023) (citing *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 124 (2d Cir. 2006)).

4

### i.    Common Law Right of Access

Courts conduct a three-step inquiry when determining whether a document should be sealed under the common law framework. *Lugosch,* 435 F.3d. at 119. At the first step, the Court must first conclude that the documents at issue are judicial documents. *Id*. If the Court determines that the documents at issue are judicial documents, the Court must then determine the weight of the presumption of public access that attaches. *Id.* At the third and final step, the Court balances competing considerations which militate toward sealing against the presumption of access. *Id.* at 120 (citing *Amodeo*, 71 F.3d at 1050).

### ii.    First Amendment Right of Access

The First Amendment also provides a qualified right of access to court records which the Court evaluates using one of two methods: 1) considering both whether the documents "have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question" otherwise referred to as the "experience and logic" approach; or 2) considering the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch*, 435 F.3d at 120. Once a First Amendment right of access attaches, the standard to justify sealing is more stringent than the common law right of access. *Lugosch*, 435 F.3d at 124.

### B.  Discussion

### i.    The U.K. Complaint

The U.K. Complaint, and all other attachments to the Petition, are judicial documents entitled to a presumption of access under the common law because they have the tendency to

5

influence the Court's ruling on the Petition itself. This is particularly true where, as here, the attached documents go to establishing whether "the requested discovery is 'for use' in a foreign proceeding and whether ... the application is a fishing expedition." *Matter of Upper Brook Companies*, No. 22-MC-97 (PKC), 2023 WL 172003, at *4 (S.D.N.Y. Jan. 12, 2023) (collecting cases for proposition that Section 1782 Petitions and attached documents are judicial documents entitled to at least some presumption of access).

Having determined that the U.K. Complaint is a judicial document, the strength of the presumption of public access under the common law is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo*, 71 F.3d at 1049. Generally, "the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id*. Section 1782 petitions are non-dispositive but call upon the Court to exercise its Article III powers to issue subpoenas and to interpret the text of the statute. Therefore, they fall somewhere in the middle of this continuum, entitled to "a lesser – but still substantial – presumption of public access." *Upper Brook Companies*, 2023 WL 172003, at *4 (citing *Brown*, 929 F.3d at 53); *see also United States v. Correia*, No. 19-CR-725-3 (JPO), 2020 WL 6683097, at *1 (S.D.N.Y. Nov. 12, 2020) (documents related to authority "ancillary to the court's core role in adjudicating a case" and "closer in nature to filings associated with discovery ... than to dispositive motions" entitled to "moderate" presumption).

Respondent argues that the U.K. Complaint is not entitled to a presumption of public access under either the common law or the First Amendment because the Petition requires the

6

Court to decide whether to permit the Petitioner to take discovery for use in an employment proceeding in the U.K., and the Court is not deciding the merits of the employment proceeding itself. (ECF 22). That argument is misplaced because the inquiry is whether the motion itself is relevant to judicial powers, not whether the specific document attached to the motion is relevant to deciding the motion. *Lugosch*, 435 F.3d at 123 (noting that a district court should not give "different types of documents ... different weights of presumption based on the extent to which they were relied upon in resolving the motion").

Since the U.K. Complaint is a judicial document entitled to a "moderate" presumption of public access, the court must balance the weight of the presumption against any "competing considerations." *Lugosch*, 435 F.3d at 120. Established "countervailing factors" include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure" and of third parties. See *id.*; *Amodeo*, 71 F.3d at 1050. In addition, "[f]inancial records of a wholly-owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Amodeo*, 71 F.3d at 1051. Courts should also consider "[t]he nature and degree of injury" that may result from disclosure, the "reliability of the information," and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Id*.

Here, Respondent argues that the U.K. Complaint is not public in the United Kingdom and that the principles of international comity require this Court to maintain the U.K. Complaint under seal – at least until it is made public in the U.K. – no matter how strong the presumption of public access. In support of that argument, Respondent offers the Declaration of an English

7

solicitor, Richard Hornshaw. (ECF 24). Mr. Hornshaw swears that, in short, the U.K. Complaint will not be made public until at least 2027 or perhaps even later because, unlike in the United States, complaints in the U.K. are only made available for public inspection at the first public hearing in the matter. (*Id*.)

In opposition, Bloomberg submits a Declaration from another English solicitor, Rupert Cowper-Coles, who argues that the Hornshaw Declaration ignores that "open justice is a fundamental principle of English law," and he notes that the U.K. Complaint has not been sealed by operation of law or by court order. (*See* ECF 27-1). He further avers that there are no restrictions as a matter of law limiting its disclosure to third parties. (*Id*.)

Mr. Cowper-Coles explains that the English Action is open to the public and the U.K. Complaint will be publicly available for inspection at the first public hearing in 2027. (*Id*. ¶ 9.) Respondent's reliance on the fact that the U.K. Complaint is not *yet* available for public inspection does not address Mr. Cowper-Coles's explanation that, in order for the English Court to restrict public access to the U.K. Complaint by an order of law (and thereby implicate issues of international comity), a party must make an application referred to under English law as a "Rule 49" motion. (*Id*. ¶ 6). Respondent has provided no evidence of such an application, much less one that has been granted by any U.K. court. Accordingly, in the absence of any evidence that the U.K. Complaint is <u>sealed</u> by a court order in the U.K., the U.K. Complaint will not remain under seal in this action. *See Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt., L.P.*, 182 F. Supp. 3d 128, 133–134 (S.D.N.Y. 2016) (without more, interest in open access to court records not overcome where foreign court arguably might require sealing).

ii.     The Partnership Agreement

For the same reasons, the Partnership Agreement should also be unsealed. The Partnership Agreement is also a judicial document entitled to the same "moderate" presumption of public access under the common law, which may be outweighed by a party's interest in "protecting confidential business information" from disclosure that would subject it to "financial harm" or a "significant competitive advantage." *Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009). However, "conclusory statements that documents contain confidential business information are insufficient to justify sealing[.]" *Johnson as Tr. of Johnson Fam. Tr. v. Saba Cap. Mgmt., L.P.*, No. 22-CV-4915 (AT), 2022 WL 8024206, at *1 (S.D.N.Y. Oct. 14, 2022) (internal quotation marks and citations omitted).

The Partnership Agreement itself is labeled "Highly Confidential," but "a confidentiality provision... cannot in and of itself be sufficient to overcome the presumption of public access. If it were otherwise, the presumption of public access would become "virtually meaningless," *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 739 (S.D.N.Y. 2018) (quoting *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 338 (S.D.N.Y. 2012). Accordingly, Respondent carries the burden to make a "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection[.]" *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). In order to carry its burden Respondent could, for example, "demonstrate that [its] 'competitive position would be affected at most, if not all, economic levels, *vis-à-vis* their direct and indirect competitors[.]" *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-CV-9193 (PGG) (SLC), 2025 WL 1305150, at *4 (S.D.N.Y. May 6, 2025)

9

(quoting *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.,* 26 F. Supp. 2d 606, 614 (S.D.N.Y. 2023).

Respondent makes only conclusory statements, however, hypothesizing generalized commercial harm without articulating <u>how</u> they would be harmed, and which are unsupported by any analysis or declarations.  (ECF Nos. 23, 32). Courts in this district have rejected such anemic and conclusory arguments time and again. *See, e.g., In re Parmalat Sec. Litig.*, 258 F.R.D. at 255 (denying motion to seal where moving party failed to explain how the marketing techniques at issue were not already public or commonly known, and yet valuable to competitors)*; and see Keurig*, 2023 WL 196134, at *9 (S.D.N.Y. Jan. 17, 2023) (denying motion to seal where moving party merely asserted that business practices were commercially sensitive without providing additional information); *c.f. Encyclopedia Brown,* 26 F. Supp. 2d at 613 (sealing permitted where "extensive and irreparable harm" to corporation demonstrated by detailed declarations).

Even assuming, *arguendo*, that Respondent's privacy and business concerns were a compelling interest sufficient to permit at least some redactions to the Partnership Agreement, Respondent does not suggest any "narrowly tailored" redactions to address its privacy concerns. (ECF 23). Rather, it seeks to seal the entirety of the Partnership Agreement. (*Id.*) Respondent does not indicate where any specific data, financial calculations, or other information is located in the Partnership Agreement which could result in any substantial harm if disclosed. Accordingly, Respondent has not met their burden to demonstrate their privacy rights or protection of confidential business information will cause specific harm substantial enough to overcome the presumption of public access under the common law.

10

### iii.    *References to the U.K. Complaint or the Partnership Agreement*

Respondent's proposed redactions to the remaining documents, the Memorandum of Law, and the two attorney Declarations, consist entirely of references to specific content within the U.K. Complaint and the Agreement. (ECF 23). As discussed *supra*, neither of those documents shall remain sealed. Accordingly, any request to redact references to their content is also **DENIED AS MOOT.**

## IV.    CONCLUSION

For the foregoing reasons, I find that Respondent has not met their burden to show that there is any actual, substantial harm that would occur if the Moving Papers were unsealed which would be sufficient to overcome a "moderate" presumption of public access. Accordingly, Respondent's application to maintain ECF Nos. 10 – 12 under seal is **DENIED** and Bloomberg's motion to unseal the same is **GRANTED**. Petitioner's application to provisionally seal ECF Nos. 10 – 12 is **DENIED AS MOOT**. Additionally, because no sealing motion has been made to seal ECF 22 and 23, they shall also be unsealed.

The Clerk of Court is respectfully directed to unseal the entirety of ECF Nos. 10, 11, 12, 22, and 23, and then close ECF Nos. 9 and 22.

SO ORDERED.


Dated: July 21, 2026                                                  */s/ Ona T. Wang*
      New York, New York                                **Ona T. Wang**
                                          United States Magistrate Judge

11