UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In Re Application Of

MICHAEL HERZOG

Petitioner, For An Order Pursuant To 28 U.S.C. §
1782 To Obtain Discovery For Use In A Foreign
Proceeding

Case No. 1:26-mc-00159-VSB-OTW

REPLY DECLARATION OF DANIEL NAFTALIN IN FURTHER SUPPORT OF
MICHAEL HERZOG'S APPLICATION FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

I, DANIEL NAFTALIN, declare as follows:

1. I submit this Declaration in further support of the Application of Michael Herzog ("Petitioner" or "Mr. Herzog") for an Order Pursuant to 28 U.S.C. § 1782 To Obtain Discovery For Use In A Foreign Proceeding (the "Application").

2. I am a solicitor duly admitted to practice in England and Wales, and I am a partner at the law firm of Mishcon de Reya LLP ("Mishcon de Reya"). I am based in London. I qualified as a solicitor in 1998.

3. I make this declaration based on my understanding and review of relevant documents and information, facts within my personal knowledge, and my training and experience as a solicitor in England and Wales.

**The English Proceeding**

4. As set out in my previous declaration submitted in these proceedings executed April 16, 2026, along with my colleagues at Mishcon de Reya, we represent Mr. Herzog in proceedings filed against Davidson Kempner European Partners, LLP ("DKEP"), Davidson Kempner Solutions

Cayman LP ("DK Solutions"), and Anthony Yoseloff on April 2, 2026 in the London Central Employment Tribunal of England and Wales (the "Employment Tribunal").

5.      Solicitors in England and Wales are subject to regulatory obligations and professional standards under the Solicitors Regulation Authority Standards and Regulations, including in relation to the conduct of litigation. These obligations include: (i) not making statements, representations or submissions to court that are not properly arguable; (ii) not wasting court time; and (iii) not misleading or attempting to mislead the court[1].

6.      As is customary in England, Mr. Herzog also has counsel (barristers) instructed to act on his behalf in the Employment Tribunal proceedings. Barristers in England and Wales are similarly subject to their own set of regulatory obligations and professional standards under the Bar Standards Board Handbook. These obligations include: (i) taking reasonable steps to avoid wasting the court's time; and (ii) not knowingly or recklessly misleading or attempting to mislead the court, including by way of making submissions, representations or any other statement which they know, or are instructed are untrue or misleading[2].

7.      Each of the claims made to the Employment Tribunal have been properly brought, and each raises allegations that are properly arguable.

**The Data Subject Access Request**

8.      A Data Subject Access Request ("DSAR") is a request for disclosure of Mr. Herzog's personal data and certain information regarding how that personal data has been processed pursuant to Article 15 of the UK General Data Protection Regulation ("UK GDPR"). It is not a request for disclosure of documents related to litigation.

9.      The obligations of the disclosing party (i.e., DKEP), under the DSAR regime are

---

[1] https://www.sra.org.uk/solicitors/guidance/conduct-disputes/

[2] https://www.barstandardsboard.org.uk/the-bsb-handbook.html

entirely different from a disclosure exercise undertaken in connection with litigation and arise from two distinct and separate requirements. The former relates to privacy and gives individuals (data subjects) a right to understand how their personal data is being held and processed, whereas the latter requires the disclosure of documents responsive to particular issues that are relevant in the litigation. There is no obligation for the disclosing party under a DSAR to search for documents relevant to a particular issue raised in the litigation and, as an example, it is common practice for a disclosing party to redact any information that is not the data subject's personal data. There are also a number of statutory exemptions available under UK GDPR and the Data Protection Act 2018 ("DPA 2018") which can be relied upon to limit or refuse disclosure in response to a DSAR, for example (and without limitation): (1) *third-party data exemption:* where complying with a DSAR would involve disclosing information that identifies another individual, that information may be withheld or redacted unless the third party has consented or it is reasonable to disclose without their consent (Article 15(4) UK GDPR); (2) *management forecasts and planning exemption:* personal data processed for the purpose of management forecasting or planning (where disclosure would prejudice the conduct of the business activity) may be exempt from disclosure (Schedule 2, Part 4, para 22 DPA 2018); and (3) *intentions in negotiations exemption:* negotiations (where the data consists of records of the disclosing party's intentions in relation to those negotiations) may be exempt from disclosure (Schedule 2, Part 4, para 23 DPA 2018).

10. The DSAR regime, and information disclosed by the disclosing party, is not intended for and is of limited evidential value in a litigation context. In connection with litigation, disclosure is the legal requirement for a party to search for and disclose those documents that are relevant to the issues in dispute. Whether or not those documents contain personal data is not relevant. DKEP's legal representatives, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul

3

Weiss"), provided DKEP's substantive response to the DSAR to Mishcon de Reya on April 7, 2026. The response included the production of 6,902 documents, of which Paul Weiss confirmed only 67 had not been redacted. Further, Paul Weiss confirmed that DKEP relied on a number of statutory exemptions to redact or withhold certain information, including (without limitation) the three statutory exemptions referenced in paragraph 9 above. Regardless, the documents ultimately produced in response to Mr. Herzog's DSAR – whether or not redacted – were collated by DKEP purportedly in accordance with their obligations under the UK GDPR, which, as explained above, is separate and distinct from any requirement to provide disclosure in connection with litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing Declaration is true and correct.

Executed on 29 July 2026
London, United Kingdom

Daniel Naftalin

4