# EXHIBIT C

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

New York
Brussels
Hong Kong
Los Angeles
San Francisco
Tokyo
Toronto
Washington, DC
Wilmington

20 Air Street
London W1B 5AN
+44 20 7367 1600

**John Patten**
**Direct Dial:** +44 20 7367 1684
**Email:** jpatten@paulweiss.com

17 December 2025

By Email

Daniel Naftalin
Mishcon de Reya
Africa House
70 Kingsway
London
WC2B 6AH

**Re: Response to Data Subject Access Request dated 12 December 2025 in relation to Mr. Michael Herzog ("MH")**

Dear Mishcon de Reya LLP

We write on behalf of Davidson Kempner European Partners LLP (our "**Client**", or the "**Firm**"), by whom we have been instructed, to acknowledge receipt of the above request made by you on behalf of MH to our Client pursuant to Art. 15 of the UK General Data Protection Regulation ("**UK GDPR**"). Any reference in this letter to the UK GDPR, includes that UK GDPR as amended or supplemented, including by the Data Protection Act 2018 and the Data (Use and Access) Act 2025 ("**DUAA**").

Our Client confirms that it is aware that it may process certain personal data of MH. However, prior to being able to provide any information on the scope of that personal data and its processing, there are certain initial matters that require addressing. In particular, although our Client intends fully to comply with its obligations under the UK GDPR, it does not consider that MH's request as currently drafted complies with the UK GDPR and/or that our Client can conduct a reasonable and proportionate search (as per the DUAA) until further clarification is provided.

### *Manifestly unfounded and excessive*

Pursuant to Art. 12(5)(b) of the UK GDPR, a controller may refuse to act on a request that is manifestly unfounded or excessive. We consider that your client's request as a whole is manifestly unfounded and excessive, both on its face (given extreme breadth, requests for information unrelated to your client and lack of clarity) and given the context in which the request is being made (in relation to ongoing disputes in other forums).

First, our Client's view is that MH's request is intended to cause disruption to and harass our Client, in connection with significantly protracted and ongoing discussions regarding MH's departure from the Firm. In this regard:

Paul, Weiss, Rifkind, Wharton & Garrison LLP is a limited liability partnership established in the State of Delaware and is authorised and regulated by the Solicitors Regulation Authority (SRA) (under SRA number 8006840). The LLP's registered office address is 20 Air Street, London W1B 5AN. The term "partner" refers to a member of the LLP or an employee or a consultant with equivalent standing and qualifications. A list of the partners and their professional qualifications can be inspected on our website or at the registered office. For further information about our regulatory position, please refer to our website: https://www.paulweiss.com/notices/legal-notice. For information about how we collect, use, and protect data, please see our Privacy Policy: https://www.paulweiss.com/notices/privacy-policy.

- MH has made this request more than one year after our respective clients began negotiations relating to MH's departure – negotiations that were accompanied by a set of demands for documents from your client that are in part strikingly similar to the requests set out in your client's DSAR.  Further, your client's latest request emerged at the end of an email in which you referred to an intention to move forward to "*measures that will be adverse to [our Client]'s interests*" and progress to "*escalatory measures*" – threats that your client and his various lawyers have now made to our Client in number of forums. It appears that your client's DSAR is one of those measures and a means of abusing the DSAR process in an attempt to unearth information to support the "claims" your client identified in a mediation statement many months ago but has not since pursued; and

- several aspects of your client's request have no clear relation to any possible manner in which our Client could be processing MH's personal data, further indicating that your client's request is not intended as a bona fide exercise of MH's rights but as an inappropriate effort to extract disclosure of non-personal data. Key examples include requests for: (i) "*concerns relating to Tony Yoseloff*" (including the activities of his family office) and business decisions alleged to be made by him; (ii) "*communications relating to the management and operation of the Firm*"; (iii) "*the process of hiring a new Chief Operating Officer to replace Eric Sacks*"; and (iv) communications between a list of 21 individuals, many of whom have no clear relation to MH. As you will be aware and we are sure you have advised your client, your client's rights under the UK GDPR do not extend to anything other than his personal data.

Second, the scope of your request is cast so wide as to make it unreasonable and disproportionate, both (as noted above) regarding its lack of nexus with your client's personal data and  the substantial burden and costs involved in responding to it.  A full response to your client's request would require extensive and widespread searching, indexing, manual review and redaction of potentially hundreds of thousands of documents, and specialist legal advice given the sensitive and private nature of some of the information requested. Specifically, we note that:

- your client's request for "*concerns relating to Tony Yoseloff*" (which is expressly is stated to be without limitation and separate to communication containing your client's personal data) is particularly broad, does not explain how and in what regard this information would relate to MH and, without explanation, includes the activities of Mr. Yoseloff's family office;

- your client has requested information contained in communications between 21 individuals who work across the Firm, without any indication why they are relevant to your client's personal data;

- your client's request for "*communications relating to the management and operation of the Firm*" (again stated expressly to be without limitation) is similarly broad and does not appear to have any specific connection with the processing of MH's personal data, making it impossible to scope searches in a reasonable and proportionate manner and further indicating an intent to cause disruption to our Client;

- your client has requested that our Client provides information contained not just in a wide variety of workplace systems (going far beyond the scope of what is reasonable, available and proportionate to the costs of procuring such information), but also on personal devices of those individuals (over which our Client has no rights or control). A search of the personal devices of these 21 individuals, and anyone else captured by your client's wide request, is manifestly excessive and would require extensive engagement with these individuals to inform

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                        3

them of the request and their rights under the UK GDPR, and seek their consent to obtain and share such devices and information; and

- your client has requested almost six years worth of data without any explanation for the rationale for that time period.

As such, your client's request appears to be an attempt to use a data subject access request under the UK GDPR as an alternative channel to seek disclosure of information to which it has no right under the UK GDPR. Additionally, as your client is well-aware, our Client does not (nor would it be reasonable to) operate an extensively resourced data protection function capable of searching, indexing, manually reviewing, analysing, filtering and redacting the potentially hundreds of thousands of records that your request would cover. This places unreasonable and disproportionate administrative pressure on our Client and has already caused it to incur substantial legal costs even in considering your initial request given its complexity and the potential extent of data involved.

As such, and pending the clarifications requested below, our Client reserves its right either not to respond, or to require the payment of a reasonable fee to respond, to some or all of your client's request. We will inform you, upon receipt of the requested clarifications below, whether our Client will need to take either action.

In the meantime, our Client reserves its right to apply any other exemptions and restrictions available to it under the UK GDPR, including where disclosure would adversely affect the rights and freedoms of other individuals, where information relates to management forecasting or planning, where the information records intentions of our Client that would prejudice our Client's ongoing negotiations with MH, and where information is subject to legal professional privilege or a duty of confidence.

### *Clarifications*

Despite the above, and in line with its obligations under the UK GDPR, our Client wishes to engage in good faith with your client's request to the extent it is reasonable and proportionate. To enable our Client to do so, we request that you and your client provide the clarifications and information set out in the Annex to this letter. Our Client cannot proceed until it receives fulsome responses to those requests and reserves the right to request further clarifications if it believes in good faith that your responses do not address the questions raised or provide sufficient information for it to respond to your client's request.

### *Information to be provided at this stage*

In line with our Client's obligations under the UK GDPR to provide information where possible at this stage, we can confirm that the Firm does process MH's personal data (but without currently knowing the scope of that personal data pending your client's substantive response to this letter).

We also note that the Firm's privacy policy (available at https://www.davidsonkempner.com/privacy-notice-employees-and-prospective-employees-global) sets out a significant portion of the information requested in your letter and required to be provided under Art. 15 of the UK GDPR, including: (i) types and sources of personal data that the Firm processes; (ii) purposes of the Firm's processing of that personal data; (iii) legal bases for such processing; (iv) details of who personal data is shared with, including details of, and means

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                    4

to request further information regarding, international data transfers; (v) details of automated decision-making the Firm carries out (i.e. none); (vi) details of data retention periods; (vii) details of MH's rights in relation to his data, including his right to complain to regulators; and (viii) means to contact the Firm for further information.

### *Timeframe*

Finally, in your letter you have stated that our Client has one month from the date of your letter to respond to MH's requests. In accordance with the UK ICO's guidance (available here), the timeframe for our Client to respond to your client's request is hereby paused as of the date of this letter while awaiting the clarifications we have requested.

We also note that, given the excessive and complex nature of your client's request and the searches and analysis that would be required to comply (but subject to whether, in response to our clarifications, your client narrows his request to a more reasonable and targeted scope), our Client reserves its right in accordance with Art. 12(3) UK GDPR to extend the time limit for response by a further two months.

We await hearing from you.

Yours faithfully,

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*

Paul, Weiss, Rifkind, Wharton & Garrison LLP

**Annex**
**Further Information Required**

To enable our Client to carry out a reasonable and proportionate search, please provide responses to the following requests.

1. **Request 2 in your letter (Concerns relating to Tony Yoseloff):**

   a. Given the statement that this request is "without limitation", more specifically confirm what is meant by "concerns" (i.e., is this information where people are expressly concerns about Tony, is it all matters that concern Tony in any form etc.) and what your client is seeking to obtain.

   b. Confirm what the "without limitation" is intended to cover (i.e. what are the specific matters in which you are interested that are not covered by the sub-categories you have noted).

   c. Confirm why you and your client believe that your client's personal data may be processed in relation to this request, both the very broad request and the specific sub-categories requested.

   d. Confirm why the family office of Tony Yoseloff is relevant.

   e. Subject to the above clarifications, confirm where you consider the personal data related to this request may be more specifically held.

2. **Request 3 in your letter (Communications relating to the management and operation of the Firm):**

   a. Given the statement that this request is "without limitation", more specifically confirm what aspects of management and operation are of interest and what your client is seeking to obtain.

   b. Confirm what the "without limitation" is intended to cover (i.e. what are the specific matters in which you are interested that are not covered by the sub-categories you have noted).

   c. Confirm why the process of hiring a new COO is relevant (when on its face this entirely appears to relate to individuals that are not your client and for which your client has no right in their personal data).

3. **Requests 4-6 in your letter (Decisions):**

   a. Confirm what is meant by a "decision" in this context (i.e. solely the final decision).

   b. Confirm which individuals or job titles you expect to have made these decisions and where to you expect them to be recorded.

   c. Confirm why your client believes he has the right to personal data and decisions made in relation to Tom Kempner and Avi Freedman.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                    6

4. **Request 7 in your letter (Individuals):**

   a. Confirm on what basis the listed individuals have been identified and why you believe they may have referenced personal data of your client.

   b. Confirm why you have also requested any communications "including" those individuals (which implies you are just looking for information on those individuals rather than information on your client's personal data).

5. **Timeframe**: Confirm why the request has been made for records dating back to 1 January 2020 (especially given that specific requests are only made in relation to the period from 2023 to 2025).

6. **Other records requested:**

   a. Confirm what is meant by data that is available "online". As you are aware, our Client is not the controller of all online data.

   b. Confirm why requests have been made for information from personal devices (i.e. on what grounds do you believe that our Client is the controller of that information and on what basis are you requesting that data is searched and extracted).