# EXHIBIT D

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

New York
Brussels
Hong Kong
Houston
Los Angeles
San Francisco
Tokyo
Toronto
Washington, DC
Wilmington

20 Air Street
London W1B 5AN
+44 20 7367 1600

**John Patten**
**Direct Dial:** +44 20 7367 1684
**Email:** jpatten@paulweiss.com

7 April 2026

By Email

Daniel Naftalin
Mishcon de Reya LLP
Africa House
70 Kingsway
London
WC2B 6AH

**Re: Data Subject Access Request dated 12 December 2025 in relation to Mr. Michael Herzog**

Dear Mishcon de Reya LLP

We write further to our letter of 21 January 2026. Unless stated otherwise, capitalised terms used in this letter are those used in your letter of 9 January 2026 or our letters of 17 December 2025 or 21 January 2026.

Our Client's response to your client's DSAR is enclosed and this letter sets out: (i) the scope of the searches undertaken; (ii) the documents being disclosed; (iii) the bases upon which certain information has been redacted or withheld; and (iv) supplementary information required to be provided under Article 15(1) and (2) of the UK GDPR.

Our Client maintains its position, as set out in our letter of 21 January 2026, that significant aspects of the original DSAR were manifestly unfounded and/or excessive (as well as the remaining aspects of the DSAR being excessive and creating a disproportionate and unreasonable burden on our Client). Nothing in this letter should be taken as a waiver of that position. Be that as it may, our Client has undertaken a significant and comprehensive review of its records within the agreed parameters in accordance with its obligations under the UK GDPR.

## 1. Scope of searches

Annex 1 sets out further detail regarding the scope of the searches conducted by our Client in response to the DSAR, which required extensive manual and technology-enabled review of our Client's electronic and hard-copy filing systems. In summary, and in accordance with the agreed search parameters, our Client has conducted searches covering:

(a)   **Time Period**: 1 January 2022 to the date of your client's DSAR on 12 December 2025.

Paul, Weiss, Rifkind, Wharton & Garrison LLP is a limited liability partnership established in the State of Delaware and is authorised and regulated by the Solicitors Regulation Authority (SRA) (under SRA number 8006840). The LLP's registered office address is 20 Air Street, London W1B 5AN. The term "partner" refers to a member of the LLP or an employee or a consultant with equivalent standing and qualifications. A list of the partners and their professional qualifications can be inspected on our website or at the registered office. For further information about our regulatory position, please refer to our website: https://www.paulweiss.com/notices/legal-notice. For information about how we collect, use, and protect data, please see our Privacy Policy: https://www.paulweiss.com/notices/privacy-policy.

(b) **Custodians**: Michael Herzog, Tony Yoseloff, Anthony Gonzalez, Eric Epstein, Gabe Schwartz, Shuly Leviant, Eric Sacks, Alison Horton, Tom Domanski, Farhana Ravel, Matt Baxley, Yehuda Biber, Jim Ganges, Pat Dennis, Chris Krishanthan, Tara Schiff, Sam Goldberg and Clem Geraghty (together, the "**Named Individuals**").

(c) **Search Terms**: "Michael Herzog", "M Herzog", "Global Head of Merger Arbitrage", "Global Head of Long/Short Equity", and your client's personal identifiers (employee ID, payroll number, email addresses, postal address, work phone numbers, and national insurance number), with variations or modifiers as more fully described in Annex 1.

(d) **Data Sources Searched**: The searches encompassed: (i) communications (including Outlook emails, Instant Bloomberg messages, and Microsoft Teams chats) between the Named Individuals; (ii) emails in your client's Outlook inbox; (iii) Instant Bloomberg messages addressed to your client; (iv) Microsoft Teams chats addressed to your client; (v) documents hosted on SharePoint, OneDrive, and/or OneNote relating to locations associated with the Named Individuals; (vi) correspondence taking place other than on approved communications channels that were reported to our Client's compliance team; (vii) personnel files relating to your client held on our Client's systems; and (viii) certain hard-copy documents held by our Client in filing systems that relate to your client (comprising Schedule A documents and coaching reports).

In determining the reasonableness and proportionality of its search, our Client has taken into account: (i) the circumstances of the request, including the narrowed scope of the DSAR following correspondence; (ii) the volume of information held by our Client that potentially relates to your client, together with the breadth of the data sources searched; (iii) the volume of results depending on the search terms used; and (iv) any difficulties involved in locating the requested information, including the need to search across multiple electronic systems and custodians.

The breadth of your client's request and the amount of time your client had spent working at our Client required our Client to spend significant time searching and manually reviewing its records to identify your client's personal data and safeguard the personal data of third parties as well as other categories of data to which your client has no right. In particular, we note the following in relation to the reasonableness and proportionality of our Client's searches in accordance with the UK GDPR and ICO guidance:

(a) In relation to searches of your client's own email inbox during the agreed search period, our Client identified that a search for your client's personal identifiers alone would yield over 177,000 results, the vast majority of which are emails to your client that do not contain his personal data beyond his name or email address as the recipient. Accordingly, our Client applied the additional search terms "you" or "your" to identify emails that are more likely to contain substantive references to your client's personal data.

(b) As set out in our letter of 21 January 2026, our Client did not conduct searches using the terms "Michael", "MH", or "Herzog" in isolation. Preliminary scoping indicated that such searches would yield approximately 1,500 GB of data from third-party sources alone, owing to the frequency of use of these terms.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                                    3

Our Client has made the same effort to search for information to respond to the DSAR as it would make to find information for its own business purposes. Furthermore, our Client has not limited its search to "live" or active systems and has included archived information, backup records and reasonably recoverable deleted records in its searches, consistent with our Client's obligations under the UK GDPR.

### 2. *Documents being disclosed*

Following completion of the searches described above and in the annex, our Client identified a total of 77,090 documents containing your client's personal data.

Our Client first undertook both technology-enabled and manual review to de-duplicate and conduct email threading (to remove duplicative content where available in other emails).

The resulting dataset was then reviewed and the following datasets were excluded in accordance with the UK GDPR and ICO guidance:

(a)     Our Client excluded 545 documents which were present in SharePoint folders called "Tax-Global" or "Market Data" or which have "headcount" in the file name (and were not otherwise captured in other areas of search such as email attachments). These folders contain files with large-volume data exports, reports, and similar bulk datasets in which any reference to your client (from examples reviewed) is incidental (or limited to one line item) rather than substantive personal data. Our Client considers that conducting a line-by-line review of these documents would be unreasonable and disproportionate.

(b)     Our Client excluded certain categories of Excel spreadsheets from the review on the basis that the effort involved in reviewing and redacting them would be disproportionate to the likelihood of identifying meaningful personal data. These comprised: (i) 367 Excel files that required sub-cell-level redaction (i.e. redaction of content within individual spreadsheet cells rather than of entire cells or rows), where the technical limitations of the review platform made such granular redaction impracticable (including due to merged cells and formatting constraints) and/or the manual effort required to perform such redactions consistently and accurately would be disproportionate; and (ii) Excel spreadsheets identified by reviewers as containing more than 500 rows and more than 100 combined references to your client's name and initials, which constituted large datasets in which your client's personal data was dispersed across an exceptionally high volume of entries, rendering line-by-line review and redaction impracticable.

(c)     Our Client excluded from disclosure 866 documents collected from SharePoint folders associated with our Client's in-house legal team, where those documents appeared exclusively in such folders and did not also appear in a folder associated with another part of the business. Documents saved exclusively in folders maintained by our Client's legal team are likely to be subject to legal professional privilege, comprising confidential communications with legal advisers or legal work product (see Schedule 2, Paragraph 19 of the DPA 2018). Performing a file-by-file privilege analysis of each such document would be unduly burdensome and disproportionate. This exclusion did not affect the treatment of email attachments or documents that also appeared in non-legal folders or as email attachments.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                          4

(d)    In addition to the measures described above, our Client excluded two further categories from the linear review process on the basis that they were unlikely to contain personal data of substance relating to your client, beyond his email address appearing in metadata or recipient fields.  These comprised: (i) 2,944 emails within the search results containing a hit only for your client's email address or name, but no other search term (i.e. where the substantive content of the communication did not appear to relate to your client); and (ii) 1,381 emails within the search results that contained 10 or more recipients, comprising mass or group communications (such as internal announcements, newsletters, or wide-distribution correspondence) in which your client was one of many recipients, and where the substantive content is unlikely to relate specifically to him. Our Client determined that it would not be reasonable or proportionate to carry out a linear review of these emails.

Following completion of the deduplication and threading and application of the above exclusions, our Client undertook both technology-enabled and manual review of each document to determine whether it did in fact contain your client's personal data and, if so, whether any exemptions apply that would permit redaction or withholding (as further described below).

Finally, our Client has withheld 4,275 documents in their entirety on the basis of one of the exemptions set out below (see section  titled "*Bases for withholding documents*").

Consequently, following all searches, exclusions and review described above, our Client is disclosing 6,902 documents in response to the DSAR, of which:

(a)    67 documents are being disclosed without redaction; and

(b)    6,835 documents are being disclosed with redactions applied for one or more of the reasons set out below.

These documents will be available for download via a secure link which will be sent to you separately via email, along with the password for accessing that link. The link is only accessible by specific email addresses, which in the first instance will be the Mishcon de Reya LLP email addresses that were copied when you sent your letter of 9 January 2026. If you require access to any further email addresses, including those of your client, please let us know by response to the email to which this letter is attached.

## 3.   *Bases for redaction*

In accordance with the UK GDPR, and consistent with the ICO guidance, our Client has applied redactions to disclosed documents in the following circumstances:

*Information not constituting your client's personal data*

The right of access under Article 15 of the UK GDPR is limited to the data subject's personal data and not entire documents. While our Client has sought to provide additional information where appropriate and reasonable to contextualise your client's personal data, it has redacted information that does not relate to or identify your client from disclosed documents or which solely relates to matters that are unrelated to your client. This includes ordinary course

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                        5

business correspondence and discussions that have no connection to your client and would not be capable of identifying him directly or indirectly.

*Third-party personal data*

Information identifying or making identifiable third parties has been redacted in accordance with the "rights of others" exemption under s. 45(4) of the DPA 2018. In accordance with ICO guidance, our Client has considered each of the relevant factors in applying this exemption. In particular, our Client has: (i) where possible, sought to comply with the request without disclosing information relating to another individual (i.e. through manual redaction of documents); (ii) determined that, given the volume of documents and number of third parties involved, it would be disproportionate and impracticable to seek individual and informed consent from each third party; and (iii) considered, in the absence of consent, whether it would nonetheless be reasonable to disclose without consent, and has concluded that it would not be reasonable to do so. In reaching this conclusion, our Client has taken into account the type of information involved (including substantive discussions regarding individuals' professional conduct and employment circumstances), the reasonable expectation of those third parties that such information would be treated confidentially, and our Client's duties of confidentiality owed to current and former employees. Accordingly, third party names, email addresses, job titles and discussions regarding individuals other than your client have been redacted.

*Legally Privileged Information*

Information protected by legal professional privilege has been redacted pursuant to Schedule 2, Paragraph 19 of the DPA 2018. Accordingly, our Client has redacted confidential communications between our Client and external or internal legal advisers where litigation is contemplated or in progress or which are for the purpose of seeking or obtaining legal advice. Provision of the enclosed materials is not intended to, and does not, waive any applicable privilege or other legal basis under which information may be protected from disclosure. If it were found that production of the enclosed materials constitutes production of otherwise privileged matters, such disclosure would be inadvertent, and is not intended to, and does not, waive the attorney-client privilege or any other protections. In the event of inadvertent disclosure, we retain the right to require the return or destruction of the material.

*Information Used for Management Forecasting or Planning*

Our Client has redacted information used for the purpose of management forecasting or planning pursuant to Schedule 2, Paragraph 22 of the DPA 2018. As explained in ICO guidance, this exemption covers information that involves an element of forward-looking strategic thinking or consideration and applies where disclosure would likely prejudice the conduct of our Client's business or activity.

Accordingly, information about upcoming business decisions that are not yet public, information relating to the hiring or termination of employees, internal restructuring plans, and related matters have been redacted to the extent that such information contains your client's personal data but disclosure would prejudice our Client's legitimate business interests.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                6

*Intentions in Negotiations*

Information recording our Client's intentions in negotiations with your client has been redacted pursuant to Schedule 2, Paragraph 23 of the DPA 2018, where disclosure would be likely to prejudice those negotiations. This exemption includes, without limitation, negotiations relating to amounts payable to your client, settlement discussions, and internal strategy regarding our Client's position in the ongoing dispute with your client.

*Information Pre-Dating the Agreed Search Period*

Where email chains or documents contain portions pre-dating 1 January 2022, those portions have been redacted as falling outside the scope of the DSAR.

4. **Bases for withholding documents**

Certain documents have been withheld in their entirety for the following reasons:

(a)     where a document would be entirely redacted after application of the exemptions described above (rendering disclosure meaningless), the document has been withheld;

(b)     a small number of documents (numbering 249 in total) have been withheld due to technical issues preventing review or redaction (e.g. file corruption, password protection, incompatibility with review software, or errors in image rendering). Our Client has made reasonable efforts to recover or access these documents, including attempting multiple viewer modes and seeking to recover passwords, but has been unable to do so; and

(c)     in accordance with ICO guidance, where the only personal data contained in a document is your client's email address and/or his name in the correspondence opener (e.g. "Dear Michael" or "Hi Michael"), our Client is disclosing a count of such documents and a single example rather than disclosing copies of all of them in full. Our Client has identified 1,021 documents falling into this category and an example of such an email is set out at Annex 2. The substance of these communications does not contain your client's personal data beyond his email address and/or name as addressee.

5. **Supplementary Information**

Pursuant to Article 15(1) and (2) of the UK GDPR, and in accordance with the UK ICO guidance, our Client provides the following supplementary information:

(a)     During and following the course of your client's engagement with our Client, our Client has processed your client's personal data in several capacities, including without limitation: (i) the administration of the partnership relationship; (ii) payroll and benefits administration; (iii) performance management; (iv) compliance with legal and regulatory obligations; (v) the conduct of business operations; and (vi) the management of, and seeking of legal advice in connection with, any disputes arising from your client's relationship with our Client, including in the context of the ongoing dispute between your client and our Client.

(b)     The categories of personal data processed include, without limitation: (i) identifying information (name, contact details); (ii) employment information (job title,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                    7

performance evaluations, personnel records); (iii) correspondence containing personal data; and (iv) opinions expressed by your client about any matter and opinions expressed by third parties about your client.

(c)    Your client's personal data has been or may be disclosed to: (i) professional advisors (including legal and tax advisers); (ii) governmental and regulatory authorities; (iii) affiliates of our Client; (iv) third-party service providers engaged to assist with business operations; and (v) where required, courts or tribunals. Given the volume of your client's personal data processed by our Client, our Client has, in good faith, set out the categories of recipient to whom personal data has been or may have been disclosed. Given the contentious nature of our Client's current relationship with your client, your client's actions to date in relation to individuals employed by or in the partnership of our Client and given the need to protect third parties (as per the English court decision in *Harrison v Cameron* that you helpfully pointed to) our Client will not be providing more specific details of third-party recipients.

(d)    Personal data is retained in accordance with our Client's data retention policies, which provide for retention periods based on legal requirements, regulatory guidance, and business necessity. Personnel records are retained for a period of the greater of six years and as required by law or contract.

(e)    The personal data disclosed was collected directly from your client during the course of his partnership with our Client, generated by our Client in the course of the partnership relationship, or received from third parties in connection with the partnership.

(f)    Our Client does not engage in automated decision-making, including profiling, that produces legal effects concerning your client or similarly significantly affects him.

(g)    For further information regarding our Client's data processing practices, please refer to our Client's privacy notice available at https://www.davidsonkempner.com/privacy-notice-employees-and-prospective-employees-global.

Should your client wish to complain about any aspect of our Client's response to the DSAR, he has the right to complain directly to our Client, to the ICO, or to seek judicial remedy in the English courts.

We trust that this response addresses your client's request comprehensively. Our Client has incurred significant time and cost responding to your client's broad and burdensome DSAR request and we hope the matter can now be put to bed.

Yours faithfully,

*Paul, Weiss. Rifkind, Wharton & Garrison LLP*

Paul, Weiss, Rifkind, Wharton & Garrison LLP

**Annex 1**
**Scope of Searches**

| Custodian | Search Terms | Number of Documents Prior to De-duplication | Notes |
|---|---|---|---|
| Communications (comprising Outlook emails, Instant Bloomberg messages and Microsoft Teams chats) between the following individuals in the "To" or "From" fields:<br>• Tony Yoseloff;<br>• Anthony Gonzalez;<br>• Eric Epstein;<br>• Gabe Schwartz;<br>• Shuly Leviant;<br>• Eric Sacks;<br>• Alison Horton;<br>• Tom Domanski;<br>• Farhana Ravel;<br>• Matt Baxley;<br>• Yehuda Biber;<br>• Jim Ganges;<br>• Pat Dennis;<br>• Chris Krishanthan;<br>• Tara Schiff;<br>• Sam Goldberg; and<br>• Clem Geraghty (the "**Named Individuals**"). | "Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of Long/Short Equity" OR Michael Herzog's employee ID, payroll number, email addresses, postal address, work phone numbers, national insurance number (the "**Personal Identifiers**") | 28,737 | Search carried out on our Client's Bloomberg Vault database (including reasonably recoverable deleted records) where all such communications are automatically stored.<br><br>The search did not identify any other email repositories (other than Outlook), any instant message records (other than Bloomberg and Microsoft Teams), or any call records or transcripts. This search picked up any archived documents, to the extent they exist.<br><br>No mobile messages exist to search as business mobile messaging is not permitted under our Client's policies. |

Paul, Weiss, Rifkind, Wharton & Garrison LLP is a limited liability partnership established in the State of Delaware and is authorised and regulated by the Solicitors Regulation Authority (SRA) (under SRA number 8006840). The LLP's registered office address is 20 Air Street, London W1B 5AN. The term "partner" refers to a member of the LLP or an employee or a consultant with equivalent standing and qualifications. A list of the partners and their professional qualifications can be inspected on our website or at the registered office. For further information about our regulatory position, please refer to our website: https://www.paulweiss.com/notices/legal-notice. For information about how we collect, use, and protect data, please see our Privacy Policy: https://www.paulweiss.com/notices/privacy-policy.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                        9

| Custodian | Search Terms | Number of Documents Prior to De-duplication | Notes |
|---|---|---|---|
| Emails in Michael Herzog's Outlook inbox with Michael Herzog in the "To" or "Cc" fields. | ("Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of Long/Short Equity" OR the Personal Identifiers) AND ("you" OR "your") | 496 | Search carried out on our Client's Bloomberg Vault database (including reasonably recoverable deleted records) where all such emails are automatically stored.

Without the addition of the "you" OR "your" search terms, this search yields 177,000 results. Our Client considers it reasonable and proportionate to add these terms given the overwhelming likelihood that any email addressed to Michael Herzog containing his personal data would contain the word "you" or "your". |
| Instant Bloomberg messages addressed to Michael Herzog. | "Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of Long/Short Equity" OR the Personal Identifiers | 24,114 | Search carried out on Instant Bloomberg messages held on our Client's Bloomberg Vault database (including reasonably recoverable deleted records) where all such messages are automatically stored. |
| Microsoft Teams Chats addressed to Michael Herzog. | "Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of Long/Short Equity" OR the Personal Identifiers | 27 | Search carried out through a query of Microsoft Teams messages held on our Client's Bloomberg Vault database (including reasonably recoverable deleted records). |
| Documents hosted on Sharepoint, OneDrive and/or OneNote relating to locations associated with the Named Individuals. | "Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of | 23,665 | Search carried out through a query of files held on our Client's Purview database (including reasonably recoverable deleted records), which includes files saved to the Desktop, Documents |

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                    10

| Custodian | Search Terms | Number of Documents Prior to De-duplication | Notes |
|---|---|---|---|
| | Long/Short Equity" OR the Personal Identifiers | | and Downloads folders of Named Individuals with access to desktop computer systems (i.e. those Named Individuals who are still employed by our Client). |
| Correspondence taking place which is not on our Client's approved systems that has been reported as breaching our Client's approved communications channels to our Client's dedicated "unintended messages" inbox in line with our Client's record-keeping policies. | "Michael Herzog" OR "M Herzog" OR "Global Head of Merger Arbitrage" OR "Global Head of Long/Short Equity" OR the Personal Identifiers | 0 | No relevant records were identified. |
| Personnel files relating to Michael Herzog | n/a | 1 | Our Client does not hold a single personnel file on its partners. As such, in addition to the Schedule A documents and coaching reports referenced below, our Client considered any other folders or repositories which may hold information relating to your client's engagement by the firm or which might (if your client had been an employee) might be considered part of a personnel file. This resulted solely in the disclosure of limited benefits/insurance information in relation to your Client. |
| Paper filing system Schedule A Documents | n/a | 49 | Retrieved from the paper filing system held by Tony Yoseloff as the Managing Partner of our Client, excluding Schedule A documents from |

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                                                11

| Custodian | Search Terms | Number of Documents Prior to De-duplication | Notes |
|---|---|---|---|
| | | | outside the requested period and Schedule As that do not contain Michael Herzog's personal data. |
| Coaching Reports | n/a | 1 | Retrieved from the paper filing system held by Tony Yoseloff as the Managing Partner of our Client. |

**Annex 2**

Paul, Weiss, Rifkind, Wharton & Garrison LLP is a limited liability partnership established in the State of Delaware and is authorised and regulated by the Solicitors Regulation Authority (SRA) (under SRA number 8006840). The LLP's registered office address is 20 Air Street, London W1B 5AN. The term "partner" refers to a member of the LLP or an employee or a consultant with equivalent standing and qualifications. A list of the partners and their professional qualifications can be inspected on our website or at the registered office. For further information about our regulatory position, please refer to our website: https://www.paulweiss.com/notices/legal-notice. For information about how we collect, use, and protect data, please see our Privacy Policy: https://www.paulweiss.com/notices/privacy-policy.

Appointment

---

| | |
|---|---|
| **From:** | Redacted |
| **Sent:** | 4/25/2023 8:49:43 AM |
| **To:** | Redacted |
| | mherzog@dkp.com; Redacted |
| **CC:** | Redacted |
| **Subject:** | Redacted - 55min Virtual Meeting |
| **Location:** | Redacted |

**Start:** 4/26/2023 9:00:00 AM
**End:** 4/26/2023 9:55:00 AM
**Show Time As:** Busy

**Importance:** High

**Recurrence:** (none)

One tap mobile:
Meeting URL: Redacted